MAJORITY MEMBERS

JOHN KLINE, MINNESOTA, Chairman

THOMAS E. PETRI, WISCONSIN
HOWARD P. "BUCK" McKEON, CALIFORNIA
JUDY BIGGERT, ILLINOIS
TODD RUSSELL PLATTS, PENNSYLVANIA
JOE WILSON, SOUTH CAROLINA
VIRGINIA FOXX, NORTH CAROLINA
BOB GOODLATTE, VIRGINIA
DUNCAN HUNTER, CALIFORNIA
DAVID P. ROE, TENNESSEE
GLENN THOMPSON, PENNSYLVANIA
TIM WALBERG, MICHIGAN
SCOTT DESJARLAIS, TENNESSEE
RICHARD L. HANNA, NEW YORK
TODD ROKITA, INDIANA
LARRY BUCSHON, INDIANA
TREY GOWDY, SOUTH CAROLINA
LOU BARLETTA, PENNSYLVANIA
KRISTI L. NOEM, SOUTH DAKOTA
MARTHA ROBY, ALABAMA
JOSEPH J. HECK, NEVADA
DENNIS A. ROSS, FLORIDA
MIKE KELLY, PENNSYLVANIA

MINORITY MEMBERS

GEORGE MILLER, CALIFORNIA
Senior Democratic Member

DALE E. KILDEE, MICHIGAN, Vice Chairman
DONALD M. PAYNE, NEW JERSEY
ROBERT E. ANDREWS, NEW JERSEY
ROBERT C. "BOBBY" SCOTT, VIRGINIA
LYNN C. WOOLSEY, CALIFORNIA
RUBEN HINOJOSA, TEXAS
CAROLYN McCARTHY, NEW YORK
JOHN F. TIERNEY, MASSACHUSETTS
DENNIS J. KUCINICH, OHIO
DAVID WU, OREGON
RUSH D. HOLT, NEW JERSEY
SUSAN A. DAVIS, CALIFORNIA
RAUL M. GRIJALVA, ARIZONA
TIMOTHY H. BISHOP, NEW YORK
DAVE LOEBSACK, IOWA
MAZIE K. HIRONO, HAWAII



**COMMITTEE ON EDUCATION
AND THE WORKFORCE**
U.S. HOUSE OF REPRESENTATIVES
2181 RAYBURN HOUSE OFFICE BUILDING
WASHINGTON, DC 20515-6100

May 24, 2011

The Honorable Arne Duncan
Secretary
U.S. Department of Education
400 Maryland Avenue, SW
Washington, DC  20202

Dear Secretary Duncan:

The use of student academic achievement data to improve classroom instruction and hold school systems, including schools and teachers, accountable for student performance has grown in importance over the last decade. Through the creation of statewide longitudinal data systems mandated and funded by the federal government, states and school districts have access to a wide array of sensitive, personal data on every student in the classroom. While this student-level data is an important tool in helping schools prepare students for the future, we must ensure it does not compromise student privacy.

The Department's Notice of Proposed Rulemaking (NPRM) on the Family Education Rights and Privacy Act or FERPA, 76 Fed. Reg. 19726 (April 8, 2011), undermines the responsibility of policymakers, researchers, teachers, and school administrators to protect the privacy of students. While the stated purpose of publishing the proposed regulations is to protect student privacy while allowing for the use of data as envisioned in the America COMPETES Act and the American Recovery and Reinvestment Act (ARRA), the regulations will jeopardize the rights of parents and ensure greater federal control of student academic achievement data. The current proposed regulations violate Congressional intent and long-standing Departmental policy in carrying out the requirements of FERPA.

FERPA was enacted to protect student education records and ensure student data are not inappropriately accessed or used by federal, state, or local researchers or government officials. The law also gives parents the right to access the education records of their children. The law and

The Honorable Arne Duncan
May 24, 2011
Page 2

Congressional intent is clear: student privacy is the first, and determining, factor governing access to sensitive student-level education records. Yet this basic premise is under assault in the proposed regulations. Any major changes to long-standing federal policy governing student privacy, including proposals to address advances in technology, access to technology, and the capabilities of research and security must be enacted by Congress. Instead of working with the House and Senate authorizing Committees to address the challenges faced in implementing new laws, the Department issued a far-reaching NPRM that distorts the original Congressional intent of FERPA.

Provisions in the NPRM that put at risk student safety and privacy include:

- **Broadening the definition of an "education program"** - The proposed regulation redefines "education program" to include those programs "principally engaged in the provision of education, including but not limited to early childhood education, elementary and secondary education, post-secondary education, special education, job training, career and technical education, and adult education. " While looking at the effectiveness of early education programs, such as Head Start, provides an interesting example of how sharing information across programs can be beneficial, this provision is written so broadly as to allow the sharing of student records far beyond the intended purpose of the NPRM. This will open up sensitive information to a broad range of individuals for any number of undefined purposes, many beyond a student's time in elementary and secondary school.

- **Defining an authorized representative** - FERPA clearly limits access to student education records to school officials and their representatives and states that any data collected by such officials shall be collected in a manner that will not permit the identification of individual students. By broadening the list of approved officials to anyone approved by the agency, the NPRM would dramatically expand the number of parties with access to sensitive student information, increasing the potential for personal data to be released publicly. The NPRM would require a written agreement between the education official and the undetermined authorized representative with the agency to determine that "reasonable methods" are taken to ensure student privacy. This expands FERPA beyond Congressional intent, fails to provide any real guarantee of student privacy protections, and incorrectly places the focus solely on security of student-level data.

- **Limiting a parent's right to opt out of a school requirement to display an ID badge** - FERPA allows parents to control the use and availability of their child's personal information, a cornerstone of current law. While the NPRM states that this provision would increase security on some school campuses, it also raises safety concerns if applied to younger students, especially when attending local school functions. Having a young child's name or other identifiable information easily accessible may decrease safety.

AR 0860

The Honorable Arne Duncan
May 24, 2011
Page 3

A number of provisions in the NPRM contain changes that Congress and the Administration should address during legislative action on FERPA, including efforts to expand enforcement activities against any entity that holds student information. Allowing for the limited use of directory information, rather than requiring it to be an "all or nothing" disclosure, which would allow schools to better safeguard student privacy by limiting when directory information would be released, should also be addressed at the legislative level rather than through regulatory overreach.

Holding schools and school districts accountable for student achievement is an important federal policy goal, and student-level data helps state and local officials and parents make informed decisions about a child's education. However, we need to keep the ultimate question of "accountability to whom and for what" in mind as we consider any changes to privacy laws and regulations. The proposed FERPA regulations would allow more parties to access identifiable student data and endanger the ability of parents to make better decisions about their child's education.

Finally, the limited public comment period imposed by this NPRM does not allow sufficient time to review the far-reaching impact of these regulatory changes. This limits parents' right to engage in the regulatory process on an issue that directly impacts their child's education and safety

In light of these serious concerns, I respectfully request you rescind the proposed NPRM and work collaboratively with Congress to address those problems the Department believes are barriers to implementing data collection requirements without compromising student privacy.

Sincerely,

*John Kline*

JOHN KLINE
Chairman

AR 0861