## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>THE UNITED STATES DEPARTMENT OF EDUCATION,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 1:12-cv-00327 (ABJ)

## <u>EPIC'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND CONSIDER EXTRA-RECORD EVIDENCE</u>

The Electronic Privacy Information Center, *et al.* ("EPIC") has conferred with the U.S. Department of Education ("Education Department" or "Department"), concerning EPIC's Motion to Supplement the Administrative Record and Consider Extra-record Evidence. The Education Department stated that it is reviewing the requested supplementation and will take a position within the time provided for an opposition. EPIC respectfully requests this Court order the Education Department to supplement the administrative record (the "Administrative Record" or "Record") filed in the above-captioned matter, to include the following four document sets explicitly referenced in the Record in the Department's Notice of Proposed Rulemaking ("NPRM"):

1. The "State-level health and human services departments [that] administer early childhood education programs" that the Department considered when it defined "education program."

2. The non-state education agencies ("SEAs") that "administer career and technical education or adult education programs" that the Department considered when it defined "education program."

3. The "educational agencies and institutions, especially school districts, [that] require students to wear and openly display a student ID badge that contains identifying information . . .when the student is on school property or participates in extracurricular activities" that the Department considered when it amended its definition of "directory information."

4. Correspondence received by the Education Department before April 8, 2011, regarding "the mandatory public display of identifying information on a student ID" and whether the mandatory display "violates the [Family Educational Rights and Privacy Act ("FERPA")] rights of parents and eligible students who have opted out of directory information disclosures."

Additionally, EPIC respectfully requests this Court consider extra-record evidence in possession of the Education Department, to include the following three documents and/or document sets:

A. Frequently Asked Questions—Cloud Computing, U.S. Department of Education's Privacy Technical Assistance Center ("PTAC"), *available at* http://www2.ed.gov/policy/gen/guid/ptac/pdf/cloud-computing.pdf ("Cloud Computing FAQ")

B. Approved education programs, pursuant to the newly created definition of "education program."

C. Pursuant to 34 CFR § 99.35, any written disclosure agreements dated after January 3, 2012 between the Secretary of Education and its "authorized representatives."

This Motion is supported by the following Memorandum of Points and Authorities and Exhibit attached thereto.

Dated:  July 23, 2012                    Respectfully submitted,

                                         By:  _____
                                              Marc Rotenberg, Esquire (DC Bar # 422825)
                                              Khaliah Barnes*
                                              ELECTRONIC PRIVACY INFORMATION
                                              CENTER
                                              1718 Connecticut Avenue, N.W., Suite 200
                                              Washington, DC 20009
                                              (202) 483-1140 (telephone)

---

* Ms. Barnes is a member of the bar of the State of Maryland.

(202) 483-1248 (facsimile)
*Counsel for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

EPIC respectfully moves this Court to order the Education Department to supplement the Administrative Record to include four document sets  (the "Omitted Documents") that were before the Department at the time of the Department's decision, and were considered, either directly or indirectly. The following document sets were directly before the Education Department when it issued the regulations at issue in this lawsuit: the Education Department's regulations implementing section 444 of the General Education Provisions Act ("GEPA"), also known as the Family Educational Rights and Privacy Act ("FERPA") published on December 2, 2011 ("the Final Regulations"). The Education Department explicitly references the following documents sets on pages AR0005-AR0006 of the Administrative Record:

1. The "State-level health and human services departments [that] administer early childhood education programs" that the Department considered when it defined "education program."

2. The non-SEAs that "administer career and technical education or adult education programs" that the Department considered when it defined "education program."

3. The "educational agencies and institutions, especially school districts, [that] require students to wear and openly display a student ID badge that contains identifying information . . .when the student is on school property or participates in extracurricular activities" that the Department considered when it amended its definition of "directory information."

4. Correspondence received by the Education Department before April 8, 2011, regarding "the mandatory public display of identifying information on a student ID" and whether the mandatory display "violates the FERPA rights of parents and eligible students who have opted out of directory information disclosures."

Although the Omitted Documents are relevant to the Final Regulations, were directly before the Department at the time of its decision, and directly relate to EPIC's argument that the

Final Regulations are "arbitrary, capricious, . . . or otherwise not in accordance with law," the Education Department excluded these documents from the Administrative Record. The Omitted Documents are expressly referred to in the Administrative Record. For example, document sets 1-4 mentioned above pertain to the Education Department's rationale in amending the Department's regulatory definitions of "education program" and "directory information." These document sets are discussed in the Record at AR0005-AR0006 in the Department's NPRM. EPIC has conducted a good faith search to find these documents on both the Education Department's website (www.ed.gov) and other Internet sites, but was unable to find the documents and therefore did not attach the Omitted Documents as exhibits. The agency, however, does have access to the Omitted Documents because it explicitly mentioned the Omitted Documents in the Record. In addition to being directly referenced in the Record, the Omitted Documents are necessary for a full and complete understanding of the issues before the Court because they address whether the Education Department's action was "arbitrary, capricious, . . . or otherwise not in accordance with law." Consequently, the Omitted Documents are also necessary to determine whether to grant injunctive relief.

Additionally, EPIC respectfully moves this Court to consider extra-record evidence in possession of the Education Department that is highly relevant to this action and necessary for effective judicial review. The relevant and necessary extra-record evidence in possession of the Education Department is:

    A.  Frequently Asked Questions—Cloud Computing, U.S. Department of Education's Privacy Technical Assistance Center ("PTAC"), *available at* http://www2.ed.gov/policy/gen/guid/ptac/pdf/cloud-computing.pdf ("Cloud Computing FAQ"). **Attached hereto as Exhibit A.**

    B.  Approved education programs, pursuant to the newly created definition of "education program."

     C.  Pursuant to 34 CFR § 99.35, any written disclosure agreements dated after January 3, 2012 between the Secretary of Education and its "authorized representatives."

At the time of the Final Regulations, the above extra-record evidence did not yet exist. When the Department published the Final Regulations, it had not yet issued any guidance on cloud computing. AR 0704. Sometime after December 2, 2011, the Department created the Cloud Computing FAQ, and posted Exhibit A to its website. The Education Department states, "this document is designed to assist educational agencies and institutions that are considering using cloud computing solutions for education data." Cloud Computing FAQ, 1. The document reveals that even though "outsourcing [information technology ("IT")] functions would not traditionally be considered an audit or evaluation" pursuant to 34 CFR §§99.31(a)(3) and 99.35 of the FERPA regulations, the Education Department will consider outsourcing IT functions as "auditing or evaluating" pursuant to FERPA regulations. Cloud Computing FAQ, 2. FERPA permits nonconsensual disclosure of education records to "authorized representatives" for audits and evaluation of federal and state education programs. 20 U.S.C.A. § 1232g(b) (2006).

In this suit, EPIC challenges, *inter alia*, the Department's expansive definition of "authorized representative." Thus, this document is highly relevant and necessary extra-record evidence because it directly relates to the circumstances under which "authorized representatives" may, pursuant to "auditing or evaluating" FERPA exemptions, gain access to and disclose education records. This document shows that following the Final Regulations, the Education Department amplified the narrowly defined circumstances under which the newly expanded "authorized representatives" may gain access to education records. Further, document sets B-C mentioned above did not exist on the Final Regulations publication date because they relate to agency documents created after the Final Regulations went into effect. As with the

Omitted Documents, EPIC conducted a good faith search to find document sets B-C on both the

Education Department's website (www.ed.gov) and other Internet sites, but was unable to find

the documents. These documents assist in explaining the agency's actions and the record before

the court, and directly relate to the issues before the Court: whether the Final Regulations exceed

the Department's statutory authority, and whether the Final Regulations are "arbitrary,

capricious, . . . or otherwise not in accordance with law."

Therefore, based on the authority cited below, the Court should order the Education

Department to add the Omitted Documents to the Administrative Record. Additionally, the Court

should consider extra-record evidence.

## II.     ARGUMENT

### 1.   The Administrative Record Should Be Supplemented to Provide a Complete Record of the Evidence that was Before the Agency at the Time of its Decision

The document sets that EPIC seeks to include in the Record were before the Education

Department when the agency promulgated the Final Regulations. In reviewing agency action

under the Administrative Procedure Act, the district court must "review the whole record or

those parts of it cited by a party." 5 U.S.C. §706; *Fund for Animals v. Williams*, 391 F. Supp. 2d

191, 196 (D.D.C. 2005); *Ctr. For Auto Safety v. Fed. Highway Admin.*, 956F.2d 309, 314

(D.C.Cir. 1992); *Natural Res. Def. Council, Inc. v. Train*, 519 F.2d 287, 291 (D.C.Cir. 1975).

The court's review must "be based on the full administrative record that was before the [agency]

at the time [it] made [its] decision." The court's review must "be based on the full administrative

record that was before the [agency] at the time [it] made [its] decision." *Fund for Animals*, 391 F.

Supp. 2d at 196 (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 420 (1971).

In reviewing the administrative record, the court "should have before it neither more nor less information than did the agency when it made its decisions." *IMS, P.C. v. Alvarez,* 129 F.3d 618, 623 (D.C.Cir. 1997) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler,* 749 F.2d 788, 792 (D.C.Cir. 1984). To this end, the record should include every document that the agency considered, either "directly or indirectly." *Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993); Amfac Resorts, L.L.C. v. Dep't of Interior, 143 F.Supp.2d 7, 12 (D.D.C. 2001); Alaska Excursion Cruises v. United States, 603 F.Supp. 541, 550 (D.D.C. 1984); see also Pers. Watercraft Indus. Ass'n v. Dep't of Commerce, 48 F.3d 540, 546 n.4 (D.C.Cir. 1995)*(noting with approval that the "whole record" contained all materials "pertaining to the [challenged] regulation"). The agency "may not skew the record in its favor by excluding pertinent but unfavorable information." *Fund for Animals v. Williams,* 391 F. Supp. 2d at 197. Additionally, the agency may not exclude information "on the grounds that it did not 'rely' on the excluded information in its final decision." *Id. Ad Hoc Metals Coalition v. Whitman*, 227 F.Supp.2d 134, 139 (D.D.C. 2002); *Amfac Resorts*, 143 F.Supp.2d at 12.

Like other administrative procedures, the administrative record "enjoys the . . . presumption of regularity [that] it properly designated the administrative record absent clear evidence to the contrary." *Bar MK Ranches,* 994 F.2d at 739-40. Notwithstanding the presumption of regularity, the administrative record can be amended by supplementing the record. To supplement the record, "the moving party must rebut the presumption of administrative regularity and show that the documents to be included were before the agency decisionmaker." *Pac. Shores Subdivision, California Water Dist. v. U.S. Army Corps of Engineers*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006). The moving party "must identify reasonable, non-speculative grounds for [his] belief that the documents were considered by the agency and

not included in the record." *Earthworks v. U.S. Dept. of the Interior*, 279 F.R.D. 180, 185

(D.D.C. 2012) (quoting *Pac Shores*, 448 F. 2d at 6). Additionally, the moving party must prove

that the documents were before the decision makers at the time of the rulemaking. *Id.* (citing

*Overton Park*, 401 U.S. at 420).

Here, the Omitted Documents are explicitly referenced in the Administrative Record but

are not included. As discussed above, document sets 1-4 are referenced and discussed in the

Administrative Record at AR0005-AR0006. Thus, they were before the agency at the time of its

decision regarding the Final Regulations. Moreover, as discussed above, the Omitted Documents

relate to EPIC's argument that the Final Regulations are "arbitrary, capricious, . . . or otherwise

not in accordance with law." It is therefore indisputable that these document sets are required to

complete the Record.

**2.     This Court Should Consider Extra-Record Evidence that is Highly Relevant to this Action and Necessary for Effective Judicial Review**

The extra-record evidence that EPIC asks this Court consider is highly relevant to the

Final Regulations and necessary for effective judicial review. Aside from supplemental

documents, this Circuit's courts will consider extra-record evidence under any of the following

circumstances:

> (1) when agency action is not adequately explained in the record before the court;
> (2) when the agency failed to consider factors which are relevant to its final decision;
> (3) when an agency considered evidence which it failed to include in the record;
> (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly;
> (5) in cases where evidence arising after the agency action shows whether the decision was correct or not;
> (6) in cases where agencies are sued for a failure to take action;
> (7) in cases arising under the National Environmental Policy Act; and
> (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989). *See also Pac Shores*, 448 F. 2d at 6. Extra-

record evidence is especially important when there has been "such a failure to explain administrative action as to frustrate effective judicial review." *Camp v. Pitts*, 411 U.S. at 142-43. *But see Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010).

Here, the extra-record evidence is highly relevant and necessary to this action under several of the Esch circumstance. Document sets A-C were all developed after the rulemaking procedure, and help explain the agency's actions and record before the court. Importantly, these records relate to the issues before the Court: whether the Final Regulations exceed the Department's statutory authority, and whether the Final Regulations are "arbitrary, capricious, . . . or otherwise not in accordance with law." These records will also show whether the Education Department decision to amend the FERPA Regulations was correct. Lastly, the changes to the FERPA regulations are more than simple changes to a few definitions; these Final Regulations removed foundational FERPA provisions and guarantees that limited disclosure of personally identifiable information. Extra-record evidence will therefore provide the Court with essential evidence to understand the complex nature of the Final Regulations, and will enable the Court to understand the issues clearly. Because the extra-record evidence is highly relevant and necessary for effective judicial review, EPIC respectfully requests this Court consider extra-record evidence.

### III.    CONCLUSION

For the forgoing reasons, EPIC's Motion to Supplement the Administrative Record and Consider Extra-record Evidence should be granted.

Dated:  July 23, 2012                        Respectfully submitted,

By:    _____
       Marc Rotenberg, Esquire (DC Bar # 422825)

Khaliah Barnes*
ELECTRONIC PRIVACY INFORMATION
CENTER
1718 Connecticut Avenue, N.W., Suite 200
Washington, DC 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)
*Counsel for Plaintiffs*

---

* Ms. Barnes is a member of the bar of the State of Maryland.