UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 1:12-cv-00327 (ABJ) ) |
| THE UNITED STATES DEPARTMENT OF EDUCATION, | ) ) ) ) |
| Defendant. | ) ) ) |

# DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND CONSIDER EXTRA-RECORD EVIDENCE

Plaintiffs' motion to supplement the administrative record in this case should be denied. This case involves a challenge under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, to the Department of Education's final rule updating its implementation of the Family Educational Rights and Privacy Act of 1974, as amended ("FERPA"), 20 U.S.C. § 1232g. On June 29, 2012, the Department filed its certified administrative record of the documents underlying the FERPA regulations published on December 2, 2011. *See* Admin. Record, ECF No. 10. Plaintiffs now ask the Court to expand the administrative record to include four categories of documents they believe were considered by the Department in its rulemaking, along with three categories of documents not in existence at the time of the rulemaking, but which plaintiffs believe inform the interpretation of the Department's regulation. *See* Pls.' Mot. Supplement, July 23, 2012, ECF No. 11. The Department consents to the supplementation of the administrative record with documents from two of plaintiffs' categories. Plaintiffs' motion, however, should be denied as to the other five requests because the Department has located no

documents responsive to two of those categories and because none of the three categories of extra-record documents meet the high bar for consideration in an administrative record case. Accordingly, plaintiffs' motion should be denied.

## BACKGROUND

FERPA protects the privacy of student education records by generally requiring written consent from parents or students before the educational agency or institution attended by the students may disclose personally identifiable information from these records to any third party. *See* 20 U.S.C. § 1232g(b)(1), (b)(2). The statute also provides exceptions to the consent requirement for numerous legitimate uses of such records. Two of those exceptions are at issue in this case: directory information, *id.* § 1232g(a)(5), and the program evaluation exception, *id.* § 1232g(b)(3).[1] In its December 2, 2011 final rule, the Department updated its regulations interpreting these two exceptions, along with numerous other changes that are not disputed in this case. *See* 76 Fed. Reg. 75641-42 (Dec. 2, 2011) (hereinafter "Final Rule"), AR 0733-34 (making changes to 34 C.F.R. §§ 99.3 and 99.35).

With regard to the directory information exception, plaintiffs oppose the conclusion that a student's identification ("ID") number may be placed on the student's ID badge. *See* Compl. § 24. And with regard to the program evaluation exception, plaintiffs dispute the Department's definition of two statutory terms relevant to that exception: "education program" and "authorized representative." *See id.* §§ 19-23. This exception permits "authorized representatives of [three federal entities or] State educational authorities [to] hav[e] access to

---

[1] The program evaluation exception is comprised from three overlapping provisions. *See* 20 U.S.C. §§ 1232g(b)(1)(C), (b)(3), (b)(5); *cf.* 53 Fed. Reg. 11942, 11948 (Apr. 11, 1988) (treating all three provisions as one exception, codified at 34 C.F.R. § 99.35). But the core of the exception is found in § 1232g(b)(3), upon which the other two provisions expressly rely.

student or other records which may be necessary in connection with the audit and evaluation of [federally or state] supported education programs, or in connection with the enforcement of the Federal legal requirements which relate to such programs." 20 U.S.C. § 1232g(b)(3) (with additions from §§ 1232g(b)(1)(C) and (b)(5)).  Thus the term "education program" shapes the scope of the exception by defining what may be audited and evaluated.  And the term "authorized representative" determines who may receive the data and conduct the evaluation on behalf of the four named entities.

## LEGAL STANDARD

When a case is brought under the APA, "[o]rdinarily, 'review is to be based on the full administrative record that was before the Secretary at the time he made his decision." *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)); *see* 5 U.S.C. § 706 (requiring court to review "the whole record or those parts of it cited by a party").  This administrative record "includes all materials compiled by the agency that were before the agency at the time the decision was made." *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (internal quotation marks and citations omitted).  "[I]f a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision." *Am. Wild Horse Preservation Campaign v. Salazar*, __ F. Supp. 2d __, 2012 WL 1609409, at *8 (D.D.C. 2012) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 685, 792 (D.C. Cir. 1991)).  This standard is frequently described as including "all documents that the agency directly or indirectly considered." *Id.* (citations and quotation marks omitted).

"[A]n agency's designation of the record 'is entitled to a strong presumption of regularity.'" *Am. Wild Horse*, 2012 WL 1609409, at *8 (quoting *Pac. Shores Subdiv. v. U.S.*

*Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006)); *see also Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985) (stating that "[t]he task of the reviewing court is to apply the appropriate APA standard of review . . . based on *the record the agency presents* to the reviewing court" (emphasis added)).  There are two ways that plaintiffs may seek consideration of documents not contained in an agency's certified record, both of which are sometimes confusingly referred to as "supplementing" the record even though they involve somewhat different legal analyses.  *See WildEarth Guardians v. Salazar*, 670 F. Supp. 2d 1, 5 n.4 (D.D.C. 2009).  On the one hand, they may seek to "add[] . . . documents the agency considered" but failed to include in the certified record; on the other hand, they may seek "review of extra-record evidence," that is, "evidence outside of or in addition to the administrative record that was not necessarily considered by the agency."  *Pac. Shores*, 448 F. Supp. 2d at 5.

To supplement the record with additional documents allegedly considered by the agency, a plaintiff must "overcome the strong presumption of regularity to which an agency is entitled" by "put[ting] forth concrete evidence that the documents it seeks to add to the record were actually before the decisionmakers." *Am. Wild Horse*, 2012 WL 1609409, at *8 (quoting *Franks v. Salazar*, 751 F. Supp. 2d 62, 67 (D.D.C. 2010)).  "[T]he plaintiff must identify reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record."  *Id.* (quoting *Franks*, 751 F. Supp. 2d at 67).

Extra-record evidence is subject to a still higher standard.  It may not be admitted "unless [the party] can demonstrate unusual circumstances justifying a departure from th[e] general rule."  *Am. Wildlands*, 530 F.3d at 1002 (quoting *Tex. Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 698 (D.C. Cir. 1991)).  This Circuit has recognized three such circumstances:

> (1) "[T]he agency deliberately or negligently excluded documents that may have been adverse to its decision," (2) "the district court needed to supplement the

record with 'background information' in order to determine whether the agency considered all of the relevant factors,"; or (3) "the agency failed to explain administrative action so as to frustrate judicial review."

*Am. Wildlands*, 530 F.3d at 1002 (quoting *James Madison Ltd.*, 82 F.3d at 1095).[2] These exceptions are few because "to review more than the information before the [agency] at the time [of its] decision risks [courts] requiring administrators to be prescient or allowing them to take advantage of post hoc rationalizations." *Boswell Mem'l Hosp.*, 749 F.2d at 792.

## ARGUMENT

**I.  TWO OF PLAINTIFFS' REQUESTED SUPPLEMENTATION CATEGORIES MUST BE DENIED BECAUSE THE DEPARTMENT IDENTIFIED NO RESPONSIVE DOCUMENTS.**

Plaintiffs' first seek to supplement the administrative record with two "document sets" they believe were "directly before" the Department when it issued the Notice of Proposed Rulemaking ("NPRM"), a belief based solely on the Department's provision of two general examples in the following paragraph:

> The proposed definition of education program in § 99.3 is intended to establish that a program need not be administered by an educational agency or institution in order for it to be considered an education program for purposes of [the program evaluation exception]. . . . [I]n many States, programs that the Secretary would

---

[2] Plaintiffs rely on *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989), for a list of eight exceptions to the general rule against considering extra record evidence. This list, compiled by commentators, not judges, is dicta, *see Nat'l Mining Ass'n v. Jackson*, __ F. Supp. 2d __, 2012 WL 1383135, at *3 (D.D.C. Apr. 20, 2012); *Earthworks v. U.S. Dep't of Interior*, 279 F.R.D. 180, 185-86 (D.D.C. 2012); *Oceana, Inc. v. Locke*, 674 F. Supp. 2d 39, 45 (D.D.C. 2009); *The Cape Hatteras Access Preservation Alliance v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 115-16 (D.D.C. 2009), and has not been adopted by the D.C. Circuit in subsequent cases. *See, e.g.*, *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010) (quoting *Am. Wildlands*' list of three instances for accepting extra-record evidence); *IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C. Cir. 1997) (identifying the same three instances in a slightly reformulated list); *James Madison Ltd.*, 82 F.3d at 1095 (collecting same three instances). *See also Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 515 (D.C. Cir. 2010) ("The APA limits judicial review to the administrative record except when there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." (internal quotation marks omitted)).

5

>regard as education programs are not administered by SEAs or LEAs.[3]  For example, in many States, State-level health and human services departments administer early childhood education programs, including early intervention programs authorized under Part C of the Individuals with Disabilities Education Act (IDEA).  Similarly, agencies other than SEAs may administer career and technical education or adult education programs.

*See* NPRM, 76 Fed. Reg. 19726, 19730 (Apr. 8, 2011), AR 0005.  Plaintiffs ask for documents identifying the specific "State-level health and human services departments" and "non-SEAs that administer career and technical education or adult education programs" that the Department "considered."  Pls.' Mot. at 4.

Plaintiffs cannot carry their "heavy burden to rebut the presumption of administrative regularity" by simply showing "that the Secretary failed to include a document that was mentioned—but not substantively cited to—on one occasion in the [agency decision]."  *Wild Earth Guardians*, 670 F. Supp. 2d at 6.  In *WildEarth Guardians*, plaintiff failed to rebut the presumption when it could only point to the brief mention of a document without providing "any other evidence to support its position that this document was before the Secretary and considered by him in evaluating the [petition]."  *Id.* at 6-7.  Here, strikingly, no documents have even been mentioned.  Instead, the NPRM simply provided examples of two broad categories of non-educational agencies known to provide services that can be described as "education programs."

Thus, plaintiffs have no evidence that any *documents* were considered but excluded.  *See Nat'l Min. Ass'n v. Jackson*, __ F. Supp. 2d __, 2012 WL 1383135, at *3 (D.D.C. Apr. 20, 2012) ("It is not enough for the plaintiffs to assert that the [agency] knew about these documents; rather, plaintiffs must offer non-speculative grounds for their belief that the agency *actually considered* the documents in question." (quotation marks and alterations omitted)).  Even if the

---

[3] "SEAs and LEAs" means state educational agencies (e.g., Virginia Department of Education) and local educational agencies (e.g., Fairfax County Public Schools).

standard were more expansive, plaintiffs have also not presented any evidence that more detailed *information* than what is contained in the NPRM was considered but excluded. Instead, the paragraph simply shows an awareness of certain information—information which is publically available. For this reason alone, plaintiffs have failed to carry their burden on supplementation.

But, in addition, the Department has chosen to introduce actual evidence to address plaintiffs' unfounded speculation. Kathleen M. Styles, the Chief Privacy Officer of the Department explains that she consulted with individuals involved with drafting the paragraph upon which plaintiffs rely. *See* Declaration of Kathleen M. Styles ("Styles Decl.") ¶¶ 6, 8 (attached as Exhibit 1). She reports that these individuals relied upon "general knowledge of the existence of [such] agencies . . . not on any specific list of agencies." *Id.* Nor is Ms. Styles "aware of any documents on [these] topic[s] that were considered by the Department but not included in the Administrative Record." *Id.* Accordingly, these two requests should be denied.

## II.     TWO OF PLAINTIFFS' REQUESTED SUPPLEMENTATION CATEGORIES ARE UNDISPUTED AND THEREFORE MOOT.

In their next two requests, plaintiffs seek the documents they believe are referenced in the following paragraph regarding student ID badges:

> An increased awareness of school safety and security has prompted some educational agencies and institutions, especially school districts, to require students to wear and openly display a student ID badge that contains identifying information (typically, name, photo, and student ID number) when the student is on school property or participates in extracurricular activities. We have received inquiries about this issue, as well as complaints that the mandatory public display of identifying information on a student ID badge violates the FERPA rights of parents and eligible students[.]

*See* NPRM, AR 0006-07. Plaintiffs specifically request identification of the "school districts" that the Department "considered" and any "[c]orrespondence received by the Education Department" before the NPRM was issued regarding the complaints and inquiries referenced in

the paragraph. *See* Pls.' Mot. at 4. These requests are subject to many of the same defects discussed in the previous section. The Department, however, reviewed documents available to the agency personnel who were involved with drafting the NPRM and identified two documents responsive to plaintiffs' requests. *See* Styles Decl. ¶¶ 11, 13.

The first document is a February 2009 email received by one of the individuals involved with drafting the NPRM that reports responses from sixteen school security chiefs regarding their use of student ID badges. *See* Styles Decl. ¶¶ 10-11, Ex. A. The second document is a complaint file, including all correspondence regarding a parent's objection to a school district's ID badge policy. *See* Styles Decl. ¶ 13, Ex. B. After inquiry, the declarant is "not aware of any other documents on this topic that were known to the individuals involved in drafting the NPRM or Final Regulations." *See id.* ¶¶ 11, 13. Because the Department is willing to stipulate to the supplementation of the administrative record with these two documents, and because the Department is aware of no other responsive documents, these requests should be denied as moot. *See IMS, P.C.*, 129 F.3d at 624 (by "joint stipulation" the parties may include "material that does not appear in the . . . administrative record").[4]

### III. PLAINTIFFS' REQUESTS FOR CONSIDERATION OF EXTRA-RECORD EVIDENCE SHOULD BE DENIED BECAUSE THEY CANNOT SHOW THE REQUIRED UNUSUAL CIRCUMSTANCES.

Plaintiffs ask that three sets of documents be submitted as extra-record evidence regarding the implementation of the 2011 Final Rule. *See* Pls.' Mot. at 5-6. Plaintiffs

---

[4] To the extent that plaintiffs may press for further searches for additional documents, the Department urges the Court to deny any such request because, for the reasons discussed in the prior section, plaintiffs have not carried their heavy burden to show that any additional documents were actually considered by the Department. Moreover, such documents would add little additional relevant material. *Cf. Ad Hoc Metals Coal. v. Whitman*, 227 F. Supp. 23 134, 142 (D.D.C. 2002) ("Where an agency has considered an issue and included relevant material in the record, supplementation with similar or identical documents is not always required.").

generically claim that these documents would "assist in explaining the agency's actions and the record before the court." *See id.* at 7, 10. They claim that this implementation information will help the Court to "understand the complex nature of the Final Regulations" and "to understand the issues clearly." *Id.* at 10. Yet plaintiffs cannot show any "unusual circumstances" here that would justify an exception to the general rule limiting the Court's review to the administrative record before the agency at the time of its decision. *See Am. Wildlands*, 530 F.3d at 1002. Plaintiffs' unsupported claim that FERPA or the Department's regulations are complex does not suffice. Even if the D.C. Circuit were to adopt its prior dicta that complexity of a case can be a basis for admitting extra-record evidence—which it has not, *see supra* n. 2—FERPA is no more complicated than many of the other statutory schemes the courts regularly address. FERPA's limited complexity thus cannot be an "unusual circumstance" justifying consideration of extra-record evidence without throwing the door wide open to such evidence in many other cases.

Plaintiffs single out only one exception adopted by the D.C. Circuit that permits consideration of extra-record evidence: where the agency has made "such a failure to explain administrative action as to frustrate effective judicial review." Pls.' Mot. at 9-10 (quoting *Camp v. Pitts*, 411 U.S. 138, 142-43 (1973)). This exception has recently been summarized by the D.C. Circuit to apply only "when the record is so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 515 (D.C. Cir. 2010). This exception, accordingly, has no application to this case where the administrative record cannot possibly be labeled "bare," and where the Department has thoroughly explained the new regulations and their impact in both the NPRM and the Final Rule. *See* NPRM, AR 0001-14; Final Rule, AR 0696-752. For that reason, and other reasons discussed below, each of these requests should be denied.

### A.   The Cloud Computing FAQ Is Not Relevant And Does Not Further Illuminate Any Issue In This Case.

Plaintiffs ask the Court to consider an eight page document titled "Frequently Asked Questions—Cloud Computing" that the Department posted on its website in June 2012.[5] More specifically, they wish to draw the Court's attention to the following sentence in this document:

> While outsourcing IT functions would not traditionally be considered an audit or evaluation, the Department recognizes that the size and scope of state longitudinal data systems may necessitate outsourcing IT functions, and believes that the use of this exception is appropriate in this instance.

Cloud Computing FAQ, Pls.' Mot., Ex. A at 2; Pls.' Mot. at 6.  Claiming that this sentence is "highly relevant," they believe it shows how the Department has used the 2011 Final Rule to "amplif[y] the narrowly defined circumstances under which the newly expanded 'authorized representatives' may gain access to education records."  Pls.' Mot. at 6.

Plaintiffs are mistaken.  Context makes clear that this sentence has nothing to do with the regulatory changes made in 2011.  Instead, it derives directly from the 2008 Final Rule.  *See id.* ("The Department made this change to the FERPA regulations in 2008.").  Indeed, this application to IT outsourcing was expressly considered in that regulation's preamble:

> In general, the Department has interpreted FERPA and implementing regulations to permit the disclosure of personally identifiable information from education records, without consent, in connection with the outsourcing of institutional services and functions.  Accordingly, the term ''authorized representative'' in § 99.31(a)(3) includes contractors, consultants, volunteers, and other outside parties (i.e., nonemployees) used to conduct an audit, evaluation, or compliance or enforcement activities specified in § 99.35, or other institutional services or functions for which the official or agency would otherwise use its own employees. For example, a State educational authority may disclose personally identifiable information from education records, without consent, to an outside attorney retained to provide legal services or *an outside computer consultant*

---

[5]  The webpage on which the document appears states that webpage was last modified on June 8, 2012.  *See* http://www2.ed.gov/policy/gen/guid/ptac/faqs.html.  And metadata in the "properties" section of the PDF itself states that the document was last modified on June 7, 2012.  *See* http://www2.ed.gov/policy/gen/guid/ptac/pdf/cloud-computing.pdf.

*hired to develop and manage a data system for education records*.

2008 Final Rule, 73 Fed. Reg. 74806, 74825 (Dec. 9, 2008), AR 0772 (emphasis added). Accordingly, this guidance would have been issued regardless of whether the 2011 Final Rule was issued, and it employs the "direct control" standard to which plaintiffs wish to revert. *Cf.* EPIC Comment, AR 0526. This document is largely irrelevant to the issues in this case, and whatever relevance it has is redundant with a document properly contained in the administrative record—the 2008 Final Rule. Under these circumstances, plaintiffs simply cannot show the unusual circumstances which would justify making an exception here.

### B.     The Department Maintains No List of "Approved Education Programs."

Plaintiffs next request that the Department be required to produce a list of "[a]pproved education programs," for which approvals have been made "pursuant to the newly created definition of 'education program.'" Pls.' Mot. at 5. This request should be denied because no such list exists. *See* Styles Decl. ¶ 15 ("The Department does not 'approve' education programs under 34 C.F.R. § 99.35. Therefore, the Department maintains no list of approved education programs."). Nor have plaintiffs shown that any such information regarding implementation of the Final Rule qualifies under any of the exceptions to the general ban on extra-record evidence. They do not allege that the agency "deliberately or negligently excluded" adverse documents. *See Am. Wildlands*, 530 F.3d at 1002. Nor do they claim that this implementation information would illuminate "whether the agency considered all of the relevant factors." *See id.* And as discussed above, there can be no argument that the agency "failed to explain" its action here, after completing a thorough NPRM and a Final Rule that described and responded to the many public comments received. *See* NPRM, AR 0001-14; Final Rule, AR 0696-752. Indeed, plaintiffs appear to present a facial challenge to the regulation, expressing worry about how

11

expansively the program evaluation exception could reach under the definition of "education program." *See* Compl. ¶ 23. Such an argument stands or falls on the merits of its interpretation of statutory text and regulatory reach. Implementation examples would serve little purpose.

### C. Written Agreements With Authorized Representatives Entered *After* the 2011 Final Rule are Not Relevant Because Plaintiffs Claim That the Definition at Issue is Overbroad, Not That It is Ambiguous.

Finally, plaintiffs seek "any written disclosure agreements dated after January 3, 2012 between the Secretary of Education and [his] 'authorized representatives.'" Pls.' Mot. at 6. The Final Rule requires that non-employees be designated "authorized representatives" for purposes of the program evaluation exception only by written agreement. *See* 34 C.F.R. § 99.31(a)(6)(iii)(C), AR 0733-34. Thus, plaintiffs seek implementation information regarding what entities have been designated by the Department as "authorized representatives."

Plaintiffs have not met any of the recognized exceptions that would permit consideration of this extra-record evidence. They make no argument of bad faith, or that the Department "deliberately or negligently excluded [adverse] documents." *Am. Wildlands*, 530 F.3d at 1002. Nor, as discussed above, can they maintain that the Department "failed to explain" its action. *See id.* Thus, their argument revolves around whether these documents qualify as "background information." *See id.* Post-promulgation implementation actions do not logically come within the definition of "background," and even if they could, these documents are not necessary here.

"Underlying all of [the extra-record evidence] exceptions is the assessment" of whether "resort to extra-record information is necessary to enable judicial review to become effective." *Nat'l Mining Ass'n*, 2012 WL 1383135, at *4 (quotation marks and alterations omitted). The Department clearly explained that the Final Rule would authorize "any entity or individual designated" by written agreement to serve as an authorized representative. *See* 34 C.F.R. § 99.3,

AR 0733. Because further information about specific entities that may have been designated would not shed any more light on the scope of this broad definition, these documents are not needed for effective review. *Cf. Midcoast Fishermen's Ass'n v. Gutierrez*, 592 F. Supp. 2d 40, 45-46 (D.D.C. 2008) (rejecting requested "background information" because it was not "useful to resolving the case"). Moreover, such information would not address the sole purpose of background information as identified by the D.C. Circuit: "to determine whether the agency considered all of the relevant factors." *City of Dania Beach*, 628 F.3d at 590; *Am. Wildlands*, 530 F.3d at 1002; *James Madison Ltd.*, 82 F.3d at 1095. Here, "there are no additional factors to which movants point that the Department . . . should have considered but did not." *Earthworks*, 279 F.R.D. at 186. Nor have plaintiffs even attempted to identify any connection between these documents and alleged additional factors for consideration. *See Cape Hatteras*, 667 F. Supp. 2d. at 116 (declining to consider extra-record evidence where plaintiffs had "not identified . . . how the [document] demonstrates what factors [the agency] needed to consider").

Moreover, plaintiffs' request for this implementation information is fundamentally inconsistent with the nature of their challenge. Courts in this Circuit have occasionally allowed implementation information to be considered when the legal question involves how a rule is being applied. *See, e.g.*, *Nat'l Mining Ass'n*, 2012 WL 1383135, at *5 (permitting documents relevant to whether the agency "has applied the Guidance as a binding rule and in an arbitrary and capricious manner"). But plaintiffs do not challenge the implementation of the Final Rule. Instead, they argue that the Final Rule itself is "not in accordance with law" and is "in excess of the [Department's] statutory authority." Compl. ¶¶ 30, 35. Implementation information will not affect these arguments. *See Boswell Memorial Hosp.*, 749 F.2d at 794 (holding that plaintiffs' "actual experience with the . . . Rule," while relevant to plaintiffs' standing "is not, however,

relevant to determining the validity of the rule"); *Earthworks*, 279 F.R.D. at 186-87 ("The analyses underlying the . . . rules are strict legal analyses that will rise or fall on the validity of the legal reasoning that led the agency to reach the conclusion it did.").

In sum, plaintiffs have failed to carry their heavy burden to show that supplementation of the record is necessary or that extra-record evidence should be considered.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion should be denied.

Dated: August 9, 2012

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Director

/s/ Galen N. Thorp           _
(VA Bar # 75517)
Trial Attorney

Of Counsel:

United States Department of Justice
Civil Division, Federal Programs Branch
DEBORAH FRIENDLY               P.O. Box 883, Room 6140
RAHUL REDDY                    Washington, D.C. 20530
Office of the General Counsel  Tel: (202) 514-4781  Fax: (202) 616-8460
U.S. Department of Education   E-mail: galen.thorp@usdoj.gov
Washington, D.C.

Attorneys for Defendant