## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, *et al.*,    ) | |
| ) | |
| Plaintiffs,    ) | |
| ) | |
| v.    ) | Civil Action No. 1:12-cv-00327 (ABJ) |
| ) | |
| THE UNITED STATES DEPARTMENT OF EDUCATION,    ) | |
| ) | |
| Defendant.    ) | |
| ) | |

### PLAINTIFFS' REPLY MOTION TO DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD AND CONSIDER EXTRA-RECORD EVIDENCE

The Department of Education's ("Education Department" or "Department") opposition to EPIC's motion for consideration of extra-record evidence should be denied. The production of the records in dispute is necessary for effective judicial review of the agency action that underlies this complaint.

EPIC challenged the Education Department's 2011 revisions to the Family Educational Rights and Privacy Act of 1974 ("FERPA"), which removed privacy safeguards for student records and exceeded the agency's statutory authority. *See* Compl. § 2. Because judicial review of agency action review is based on the full and complete administrative record before the agency, EPIC filed a motion to supplement the administrative record with four document sets, described by the agency, that were before the agency when it issued its final regulations, but were omitted from the administrative record. *See* Pls.' Mot at 1-2. Given the paucity of the administrative record, EPIC also moved this Court to consider extra-record evidence that is highly relevant and necessary for effective judicial review. *Id*. at 5.

As discussed below, the Department admits that it omitted two document sets from the administrative record that were directly before the agency at the time of the agency's decision. EPIC therefore stipulates to the supplementation of the administrative record with the omitted documents that the agency considered when it expanded the definition of "directory information." Def.'s Opp'n at 8. Moreover, the Department admits that when it proposed to define "education programs," it did not rely on factual evidence, but rather a "general knowledge" of "non-state education agencies ('SEAs')" that "administer career and technical education or adult education programs" and "State-level health and human services departments" that administer " early childhood education programs." *Id.* at 7; *see also* Declaration of Kathleen M. Styles ("Styles Decl.") ¶¶ 6,8. Therefore, the Department claims that it does not have "any specific lists" of SEAs or "State-level health and human services departments" that administer the aforementioned education programs. Def.'s Opp'n at 8; *see also* Styles Decl. ¶¶ 6,8. Because the Department claims that the lists do not exist, the Department argues, and EPIC must agree, that EPIC's motion to supplement the record with these two document sets should be denied because the Department does not have documents that it explicitly referenced. Def.'s Opp'n at 7. Thus, the scope of this reply motion is limited to the Education Department's opposition to EPIC's requests for consideration of extra-record evidence.

## FACTS

On February 29, 2012, EPIC filed a lawsuit under Administrative Procedure Act ("APA"), 5 U.S.C. §701 *et seq*., arguing that the Department's December 2011 regulations amending FERPA exceeded the agency's statutory authority and were not in accordance with law. *See* Pls.' Compl. at 6, ECF No. 1. The Education Department filed its answer on May 4, 2012. Def.'s Answer, ECF No.7. On May 21, 2012 this Court ordered the Department to produce a full and complete administrative record by June 29, 2012. Ct. Order, ECF No. 9. After reviewing the record

provided by the agency, EPIC filed a Motion to Supplement the Administrative Record and Consider Extra-record Evidence. Pls.' Mot., ECF No. 11.   EPIC's motion noted that certain documents explicitly mentioned in the agency's Notice of Proposed Rulemaking ("NPRM") were omitted from the record provided by the agency. *Id*. at 4-5. Specifically, EPIC "request[ed] this Court order [the Department] to supplement the administrative record . . . to include the following four document sets explicitly referenced in the Notice of Proposed Rulemaking ('NPRM'):

1. The 'State-level health and human services departments [that] administer early childhood education programs' that the Department considered when it defined 'education program.'

2. The non-state education agencies ('SEAs') that 'administer career and technical education or adult education programs' that the Department considered when it defined 'education program.'

3. The 'educational agencies and institutions, especially school districts, [that] require students to wear and openly display a student ID badge that contains indentifying information . . .when the student is on school property or participates in extracurricular activities' that the Department considered when it amended its definition of 'directory information.'

4. Correspondence received by the Education Department before April 8, 2011, regarding 'the mandatory public display of identifying information on a student ID' and whether the mandatory display 'violates the [Family Educational Rights and Privacy Act ('FERPA')] rights of parents and eligible students who have opted out of directory information disclosures.' "

 *Id.* at 1-2. The Education Department argues that the first two supplementation categories must be denied because the agency "identified no responsive documents." Def.'s Opp'n at 5.   Although the agency's 2011 NPRM explicitly references the first two supplementation categories as part of the agency's "reasons" for defining "education program" in an expansive manner, the Department claims it did not rely on a specific list to support its proposition, but rather "general knowledge of the existence of [such] agencies." AR0005; Def.'s Opp'n at 5. *See also* Styles Decl. ¶¶ 6,8. The

Department does not dispute the final two supplementation categories, and provides them as exhibits.

Notwithstanding the Department's stipulation to supplement the record the two supplementation categories concerning "directory information", the Department argues that EPIC does not meet its burden to supplement the record. Def.'s Opp'n at 6-8. As discussed in detail in EPIC's motion to supplement the record, and as evidenced by the Department identifying documents that it considered when it issued the final regulations, but that it admittedly omitted from the record, EPIC met its burden. *See* Pls.' Mot. at 7-9; Def.'s Opp'n at 8. To supplement the record, "the moving party must rebut the presumption of administrative regularity and show that the documents to be included were before the agency decisionmaker." *Pac. Shores Subdivision, California Water Dist. v. U.S. Army Corps of Engineers*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006). The moving party "must identify reasonable, non-speculative grounds for [his] belief that the documents were considered by the agency and not included in the record." *Earthworks v. U.S. Dept. of the Interior*, 279 F.R.D. 180, 185 (D.D.C. 2012) (quoting *Pac Shores*, 448 F. 2d at 6). Additionally, the moving party must prove that the documents were before the decision makers at the time of the rulemaking. *Id*. (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971)).

Contrary to the Department's argument that EPIC's is "unfounded" in its "speculation" that "documents were considered but excluded," the omitted documents are explicitly referenced in the Administrative Record as "reasons" for the Department to expand its regulatory definition of "directory information."AR0005-AR0007. And the Department's stipulation to supplementing the record with this evidence proves that the documents existed but were excluded.

Additionally, as the agency provided only a small number of documents for the Administrative Record, EPIC's motion further requested this Court consider the following extra-record evidence in the Department's possession that is highly relevant to EPIC's legal challenge and necessary for effective judicial review:

    A.   Frequently Asked Questions—Cloud Computing, U.S. Department of Education's Privacy Technical Assistance Center ("PTAC"), *available at* http://www2.ed.gov/policy/gen/guid/ptac/pdf/cloud-computing.pdf ("Cloud Computing FAQ")

    B.   Approved education programs, pursuant to the newly created definition of "education program."

    C.   Pursuant to 34 CFR § 99.35, any written disclosure agreements dated after January 3, 2012 between the Secretary of Education and its "authorized representatives."

*Id*. at 5-6. The Education Department claims that it does not maintain a list of "approved education programs" pursuant to the newly created definition of "education program." Def.'s Opp'n at 11-12; *See also* Styles Decl. ¶ 15. EPIC rightfully requested consideration of this evidence, because the Administrative Record indicated that the Department would approve or otherwise "assess" "education programs" to determine if the proposed programs comply with regulatory standards. Specifically, the Administrative Record only provides a nonexhaustive list of "education programs," and states that each "education program" will "need to be assessed to determine if it meets the regulatory definition of 'education program'." AR 0706. Because the Department claims that it maintains no list of approved or otherwise assessed education programs that meet the regulatory definition, EPIC must concede that EPIC's request for consideration of this document must be denied. Therefore, as discussed below, the remainder of this motion is confined to the Department's opposition to EPIC's request for consideration of the Cloud Computing FAQ and written disclosure agreements between the Secretary of Education and its "authorized representatives."

## ARGUMENT

I.   **PLAINTIFFS' REQUEST FOR CONSIDERATION OF EXTRA-RECORD EVIDENCE SHOULD BE GRANTED BECAUSE THE DOCUMENTS ARE HIGHLY RELEVANT TO EFFECTIVE JUDICIAL REVIEW OF THE AGENCY ACTION**

In opposition to the consideration of extra-record evidence, the agency contends that the D.C. Circuit's holding in *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989), which identified eight exceptions to the general rule prohibiting review of extra-record evidence is "dicta." Def.'s Opp'n at 5, n.2. The Department further contends that the exceptions were "compiled by commentators, not judges," and that they "ha[ve] not been adopted by the D.C. Circuit in subsequent cases." Def.'s Opp'n at 5. The Department's assertions are plainly rebutted by the Circuit's original opinion and in subsequent cases. In *Esch,* the D.C. Circuit stated "the courts have developed a number of exceptions countenancing use of extra-record evidence to that end. As recently summarized by two commentators, exceptions to the general rule have been recognized [in eight circumstances." *Esch,* 876 F.2d at 911.  The Court noted "[t]he caselaw supports these applications" and cited to several opinions from the Second, Eighth, Ninth, and Tenth Circuits. Esch, 876 F.2d at 911 n.2.

In *IMS, P.C. v. Alvarez,* the D.C. Circuit examined the "accepted exceptions" and concluded that plaintiff "has not demonstrated that the agency failed to examine all relevant factors or to adequately explain its grounds for decision, or that the agency acted in bad faith or engaged in improper behavior in reaching its decision." 129 F.3d 618, 624 (D.C. Cir. 1997); *see also Oceana, Inc. v. Locke,* 674 F. Supp. 2d 39, 44-45 (D.D.C. 2009) (describing *Alvarez* as having "identified four 'accepted exceptions to the principle that the court cannot consider information that falls outside the agency record.'"). Following *Alvarez,* the D.C. Circuit reiterated these factors in slightly different language, noting that resort to extra-record evidence

may be appropriate when "there has been a strong showing of bad faith or improper behavior or when the record is so bare that it prevents effective judicial review." *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010). Several of these exceptions bear a striking resemblance to several exceptions listed in *Esch*. For example, the *Alvarez* court's consideration of extra-record evidence where "the agency failed to examine all relevant factors or to adequately explain its grounds for decision," *Alvarez*, 129 F.3d at 624, mirrors the first two *Esch* exceptions permitting extra-record evidence when "the agency failed to consider factors which are relevant to its final decision" or "agency action is not adequately explained in the record before the court." 876 F.2d at 991.

As Judge Walton recently explained:

In *Esch v. Yeutter*, 876 F.2d 976, 991, 278 U.S. App. D.C. 98 (D.C. Cir. 1989), the District of Columbia Circuit stated that extra-record evidence was reviewable if it fell within one of eight exceptions. Since then, the Circuit appears to have narrowed these exceptions to four: (1) when the agency failed to examine all relevant factors; (2) when the agency failed to explain adequately its grounds for its decision; (3) when the agency acted in bad faith; or (4) when the agency engaged in improper behavior.

*Nat'l Min. Ass'n v. Jackson*, Nos. 10–1220, 11–295, 11–0446, 11–0447, 2012 WL 1383135, at*3 (D.D.C. Apr. 20, 2012).

Here, the written disclosure agreements dated after January 3, 2012 fit under at least two different *Esch* exceptions, which have also been adopted by the D.C. Circuit: Exception One, allowing extra-record evidence "when agency action is not adequately explained in the record before the court"; and Exception Two, allowing extra-record evidence "when the agency failed to considered factors which are relevant to its final decision."

The written disclosure agreements are not "adequately explained in the record before the court." Although the Department broadly authorizes "any entity or individual designated" by

written agreement to serve as an authorized representative, obtaining the disclosure agreements would explain exactly to whom the Education Department would disclose student personal information. AR 0733. This information directly relates to EPIC's claim that the 2011 final regulations are "not in accordance with law." Knowing the specific entities will inform whether, in disclosing to certain entities, the Department violates the FERPA. Additionally, the disclosure agreements will indicate "whether the agency failed to consider factors which are relevant to its final decision." Because the final regulations permit broad authorization and subsequent access to student personal information, consideration of the actual disclosure agreements will illustrate the unintended consequences of the broad application, and further indicate whether the agency considered the consequences in expanding "authorized representatives."

Moreover, under *Esch*, the Cloud Computing FAQ qualifies as extra-record evidence because the agency action relating to cloud computing guidelines is not adequately explained in the record before the court. The Final Regulations state that the "Department has not yet issued any official guidance on cloud computing, as this is an emerging field." AR 0704. Therefore, the agency's cloud computing guidelines were not adequately explained in the record before the court, because they did not exist at the time of the record.

## II. ALTERNATIVELY PLAINTIFFS' REQUEST FOR CONSIDERATION OF EXTRA-RECORD EVIDENCE SHOULD BE GRANTED BECAUSE PLAINTIFFS DEMONSTRATE THE REQUISITE UNUSUAL CIRCUMSTANCES UNDER AMERICAN WILDLANDS v. KEMPTHORNE

Alternatively, even under the narrower standard for extra-record consideration, espoused by the Department, EPIC meets its burden for its extra-record evidence request for consideration. The Department cites to *American Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008), which addresses at least three circumstances under which this Circuit will consider extra-

record evidence:

> (1) "[T]he agency deliberately or negligently excluded documents that may have been adverse to its decision," (2) "the district court needed to supplement the record with 'background information' in order to determine whether the agency considered all of the relevant factors,"; or (3) "the agency failed to explain administrative action so as to frustrate judicial review." *Am. Wildlands*, 530 F.3d at 1002 (quoting *James Madison Ltd.*, 82 F.3d at 1095).

This Court has recently held that even if "the administrative record is not so bare as to frustrate judicial review as to all of the plaintiffs' claims," extra-record evidence that post-dates the final agency action is appropriate when the administrative record is "bare as to how" the agency has applied its regulations, and "the Court's assessment of one of the plaintiffs' challenges to the application of the [final regulations] is not possible by way of the administrative record alone." *Jackson*, 2012 WL 1383135, at *5.

Here the record is "bare as to how" the agency applies its Cloud Computing FAQ because at the time of final regulations, the agency had not yet issued any official guidance on cloud computing. Although the 2008 FERPA regulations permit State Educational authorities to "disclose personally identifiable information from education records, without consent, to . . . an outside computer consultant," the 2011 regulations indicate that the 2008 regulations designating "outside computer consultants" as "authorized representatives" did not apply to cloud computing. AR 0772. Specifically, in the final regulations the Department states, "Several commenters sought clarification on whether the proposed regulations would permit cloud computing, where data can be hosted in a different State or country . . . The Department has not yet issued any official guidance on cloud computing, as this is an emerging field." AR 0704. Here, the Department explicitly states that it had not contemplated cloud computing, and much less designating "authorized representative" to include cloud computing outsourcing. And if in 2011 the agency said that it had not issued any guidance on cloud computing, then the 2008 reference to "outside computer consultants" did not

implicate outsourcing student data via cloud computing. The agency should not be permitted to retroactively expand its 2008 regulations to encompass cloud computing.

Moreover, throughout the Cloud Computing FAQ, the Education Department distinguishes cloud computing solutions from traditional computer data systems. Pls.' Mot., Ex. A. In fact, the reason the Education Department provides cloud computing guidance with this document is because cloud computing is different from traditional computer data systems. The Cloud Computing FAQ discusses the differences in detail. This further indicates that the 2008 final regulations' mention of outsourcing to computer consultant did not implicate cloud computing services, because by the agency's own representation cloud computing is distinct from having "an outside computer consultant  . . . develop and manage a data system for education records." AR 0772. Importantly, the Cloud Computing FAQ matters because agency guidance on cloud computing relates directly to one of the issues before the Court: whether the Department's regulations were "not in accordance with law." As EPIC's motion states, and as is shown by the Cloud Computing FAQ, the document reveals that even though "outsourcing [information technology ("IT")] functions would not traditionally be considered an audit or evaluation" pursuant to 34 CFR §§99.31(a)(3) and 99.35 of the FERPA regulations, the Education Department will consider outsourcing IT functions as "auditing or evaluating" pursuant to FERPA regulations. Pls.' Mot., Ex. A at 2; Pls.' Mot. at 6. FERPA permits nonconsensual disclosure of education records to "authorized representatives" for audits and evaluation of federal and state education programs. 20 U.S.C. § 1232g(b) (2006). But as described above, cloud computing is distinctive from traditional IT functions. Thus, this document shows that the agency has expanded "authorized representatives" to include cloud computing professionals. As discussed above in detail, prior to this document, the agency had never issued guidance on cloud

computing, not even in the 2008 regulations.

Lastly, the record is "bare as to" how the agency has authorized entities or individuals to serve as "authorized representatives." The Education Department notes, and EPIC agrees, that the scope of "authorized representatives" is a broad. Def.'s Opp'n at 12-13.  The record, however, does not contain any examples of *how* the definition has been applied and with whom the agency has signed agreements. As discussed above in detail, knowing the specific entities with which the Department has signed disclosure agreements is critical because it addresses an issue before this Court: whether the Department's definition of "authorized representative" violates the FERPA. *See supra* pp. 7-8.

## CONCLUSION

For the forgoing reasons, EPIC's Motion to Supplement the Administrative Record and Consider Extra-record Evidence should be granted, and the Education Department's motion should be denied.

Respectfully submitted,

By:    _____
        Marc Rotenberg, Esquire (DC Bar # 422825)
        Khaliah Barnes*
        David Jacobs**
        ELECTRONIC PRIVACY INFORMATION
        CENTER
        1718 Connecticut Avenue, N.W., Suite 200
        Washington, DC 20009
        (202) 483-1140 (telephone)
        (202) 483-1248 (facsimile)
        *Counsel for Plaintiffs*

Dated: August 16, 2012

_____

* Ms. Barnes is a member of the bar of the State of Maryland.
** Mr. Jacobs's admission is pending in the State of New York.