**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 12-0327 (ABJ) |
| UNITED STATES DEPARTMENT OF EDUCATION, | ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

This case is presently before the Court on the Motion to Supplement the Administrative Record and Consider Extra-Record Evidence, [Dkt. # 11] ("Pls.' Mot."), brought by plaintiffs the Electronic Privacy Information Center, Grayson Barber, Pablo Garcia Molina, Peter Neumann, and Deborah Peel (together "EPIC"). Although EPIC's original motion requests the addition of seven types of documents, only two types are currently contested. EPIC contends that the documents at issue are "necessary for a full and complete understanding of the issues before the Court because they address whether the Education Department's action was 'arbitrary, capricious . . . or otherwise not in accordance with law.'" Pls.' Mot. at 5 (alteration in original). Defendant the United States Department of Education ("Department") opposes the motion. Def.'s Opp. to Pls.'s Mot. to Supplement the Admin. R. and Consider Extra-R. Evidence [Dkt. # 13] ("Def.'s Opp."). Because EPIC fails to show that the documents are necessary for effective judicial review, the Court will deny the motion as to the addition of the two types of documents at issue.

1

## BACKGROUND

The Family Educational Rights and Privacy Act of 1974 ("FERPA"), 20 U.S.C. § 1232g, protects student privacy by generally requiring parental written consent before any federally-funded educational agency may release a student's records or other identifiable information to a third party. *Id.* §§ 1232g(b)(1), (b)(2). The statute also provides exceptions to the prior written consent requirement for certain legitimate needs, such as the provision of public directory information, *id.* § 1232g(a)(5)(B), and the audit and evaluation of "Federally-supported education programs," *id.* § 1232g(b)(3). The latter exception allows the disclosure of information in specified circumstances to "authorized representative[s]." *Id.*

By notice published on December 2, 2011, the Department issued a Final Rule which, in relevant part, provided new definitions for some of the statutory terms used in the exception provisions, including the term "authorized representative." *See* Compl. [Dkt. #1] ¶¶ 7–13; Def.'s Opp. at 2–3.

On February 29, 2012, EPIC filed its complaint under sections 706(2)(A) and (C) of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 500 *et seq.*, requesting that the Court hold unlawful and set aside the Final Rule. Compl. at 7. EPIC alleges that the Final Rule is "not in accordance with law" and is "in excess of [the Department's] statutory authority." Compl. ¶¶ 30, 35. In particular, EPIC alleges that the definitions of statutory terms in the Final Rule, including the definition of the term "authorized representative," are overly expansive because they allow non-government actors to gain access to and disclose students' education records. Pls.' Mot. at 6–7.

On July 23, 2012, EPIC filed the motion to supplement the administrative record and consider extra-record evidence. EPIC requested that a total of seven different types of

documents be added to the record for the Court's review.  Pls.' Reply to Def.'s Opp. to Pls.' Mot. ("Pls.' Reply") at 2, 5.  The two types of documents still in dispute are: (1) "Frequently asked Questions – Cloud Computing, U.S. Department of Education's Privacy Technical Assistance Center ('PTAC'), available at http://www2.ed.gov/policy/gen/guid/ptac/pdf/cloud-computing.pdf ('Cloud Computing FAQ')"; and (2) "pursuant to 34 CFR § 99.35, any written disclosure agreements dated after January 3, 2012 between the Secretary of Education and its 'authorized representatives.'"  Pls.' Mot. at 2; Pls.' Reply at 5.[1]  The documents in both categories were created after the Department issued its Final Rule.  Pls.' Mot. at 6.

    EPIC argues that these documents are necessary for effective judicial review because they speak to how the Department's new definitions have been and will be applied, a topic as to which the administrative record is "bare."  Pls.' Mot. at 10; Pls.' Reply at 9–11.  According to plaintiffs, the Cloud Computing FAQ would show "that the agency has expanded 'authorized representatives' to include cloud computing professionals," Pls.' Reply at 10, and the written disclosure agreements would "explain exactly to whom the Education Department would disclose student personal information," Pls.' Reply at 8.  In other words, EPIC seeks to introduce

---

[1]  As to the remaining five document requests:  The Department has consented to the addition of two of the types of documents:  (1) "The educational agencies and institutions, especially school districts, that require students to wear and openly display a student ID badge that contains identifying information when the student is on school property or participates in extracurricular activities that the Department considered when it amended its definition of 'directory information,'" and (2) "Correspondence received by the Education Department before April 8, 2011, regarding the mandatory public display of identifying information on a student ID and whether the mandatory display violates the [FERPA] rights of parents and eligible students who have opted out of directory information disclosures."  Pls.' Mot. at 2; Def.'s Opp. at 8.  The Court will accordingly grant plaintiffs' motion as to those two categories of documents, and since defendant has attached the responsive documents to its opposition to the motion to dismiss, the Court will direct the Clerk to re-docket them as a supplement to the administrative record.  The final three document requests were abandoned by EPIC after the Department represented that no such documents exist, Pls.' Reply at 2, 5, so the Court will deny the motion as to those three documents.

these documents in order to show just how expansively the definitions in the Final Rule can be, and actually have been, interpreted by the agency.

## STANDARD OF REVIEW

When reviewing agency action under the APA, the Court's review is limited to the administrative record that was before the agency at the time it made its decision. *See* 5 U.S.C. § 706 (2012); *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1095 (D.C. Cir. 1996); *see also Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("In applying [the abuse of discretion] standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). The record must include "all documents and materials that the agency directly or indirectly considered . . . [and nothing] more nor less." *Maritel, Inc. v. Collins*, 422 F. Supp. 2d 188, 196 (D.D.C. 2006) (citations and internal quotation marks omitted).

"Because administrative records are presumed complete, motions to supplement the record are granted only in limited circumstances." *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 155 (D.D.C. 2012), citing *Theodore Roosevelt Conservation P'ship v. Salazar,* 616 F.3d 497, 514 (D.C. Cir. 2010); *see also Calloway v. Harvey*, 590 F.Supp.2d 29, 37 (D.D.C. 2008) ("There is a standard presumption that the [administrative] agency properly designated the Administrative Record.") (alterations in original) (citations and internal quotation marks omitted). Courts only grant motions to supplement the administrative record in exceptional cases, *Fund for Animals, v. Williams*, 391 F. Supp. 2d 191, 197 (D.D.C. 2005), citing *Fund for the Animals v. Williams*, 245 F. Supp. 2d 49, 58 (D.D.C. 2003), in order to maintain the "harmonious relationship between agency and court[.]" *Pac. Shores Subdiv., Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5 (D.D.C. 2006), quoting *San Luis Obispo*

*Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1325−26 (D.C. Cir. 1984), *decision aff'd on reh'g en banc*, 789 F.2d 26 (D.C. Cir. 1986). "Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President." *San Luis Obispo*, 751 F.2d at 1325. While it is sometimes appropriate to consider extra-record information, supplementation of the record "is the exception, not the rule." *Theodore Roosevelt Conservation P'ship*, 616 F.3d at 514. The principle that judicial review normally should be confined to the administrative record "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny." *Esch v. Yeutter*, 876 F.2d 976, 991 (D.C. Cir. 1989).

Courts will allow "'evidence outside of or in addition to the administrative record that was not necessarily considered by the agency'" in certain "unusual circumstances." *Jackson*, F. Supp. 2d at 156, quoting *Calloway*, 590 F. Supp. 2d at 38; *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008). In *Esch*, 876 F.2d at 991, the District of Columbia Circuit listed eight such circumstances, but the Circuit has since narrowed the test. *See Jackson*, 856 F. Supp. 2d at 156−57, citing *IMS, P.C. v. Alvarez*, 129 F.3d 618, 624 (D.C. Cir. 1997); *see also Oceana, Inc. v. Locke*, 674 F. Supp. 2d 39, 44−45 (D.D.C. 2009) (stating that *Esch*'s discussion of eight factors was dicta, and therefore should be read narrowly). Most recently, the District of Columbia Circuit limited the circumstances when a court should consider extra-record evidence to three categories:

> (1) [T]he agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) the district court need[s] to supplement the record with 'background information' in order to determine whether the agency considered all the relevant factors; or (3) the agency failed to explain administrative action so as to frustrate judicial review.

5

*Am. Wildlands*, 530 F.3d at 1002 (citations and internal quotation marks omitted), citing *James Madison Ltd.*, 82 F.3d at 1095 (collecting cases). However, the Court will only "'resort to extra-record information [if it is necessary] to enable judicial review to become effective.'" *Calloway*, 590 F. Supp. 2d at 38, quoting *Esch*, 876 F.2d at 991. To that end, Courts require as a threshold determination that the moving party demonstrates a "'strong showing of bad faith or improper behavior'" or that "the record is so bare that it prevents effective judicial review." *Commercial Drapery Contractors, Inc. v. United States*, 133 F.3d 1, 7 (D.C. Cir. 1998), quoting *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 420 (1971); *see also Jackson*, 856 F.Supp.2d at 157.

## ANALYSIS

The Court will deny EPIC's motion to supplement the record with the two categories of documents at issue because EPIC has not shown that the documents are necessary to make the Court's review effective. In fact, the Court finds the documents largely irrelevant the inquiry before it. EPIC has challenged the Department's Final Rule as an abuse of discretion and as promulgated in excess of statutory authority. Compl. ¶ 30, 35. When reviewing agency action for abuse of discretion, the Court is limited to determining whether the Department's regulation was reasonable in light of the materials before it. *Citizens to Pres. Overton Park*, 401 U.S. at 416 (1971) (In determining if there was an abuse of discretion, "the court must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."); *see also James Madison*, 82 F.3d at 1095 (Under the abuse of discretion standard, the Court should consider only the material that was "before the agency at the time the decision was made") (citations and internal quotation marks omitted). And in determining whether the regulations are consistent with FERPA, the Court must look to the face of the regulation, not to the way it is later interpreted. *See Health Ins. Ass'n of Am. v. Shalala*,

6

23 F.3d 412, 421 (D.C. Cir. 1994) (upholding agency regulation when "[o]n its face, [it] does not appear inconsistent with the . . . statute"); *Dart v. United States*, 848 F.2d 217, 222 (D.C. Cir. 1988) (the "test for whether an agency has acted 'in excess of its delegated powers' has been alternatively phrased as whether the agency action 'on its face' violated a statute."). The extra-record evidence that EPIC seeks to include in the administrative record would not add to the Court's inquiry on either count.

EPIC's blanket assertions that the record is "'bare as to how' the agency applies its Cloud Computing FAQ," Pl.'s Reply at 9, and as to "how the agency has authorized entities or individuals to serve as 'authorized representatives,'" Pls.' Reply at 11, does not help to resolve the issues that are before the Court. The requested documents do not concern the reasonableness of the agency's decision-making process or the scope of the Final Rule on its face; rather, they concern the ramifications of the agency's rule in the time since it has been issued. Although plaintiffs contest the broadness of the Department's interpretation of the phrase "authorized representatives" in FERPA, "we review only the regulation; just how far [the Department] may stretch the language, under the usual judicial deference to an agency's interpretation of its own regulations . . . must await resolution in concrete cases." *Health Ins. Ass'n of America*, 23 F.3d at 422 (citations omitted); *see also id.* at 421 ("We decline to speculate about the factual settings in which [the agency] will invoke the regulation. . . . The appellants may, of course litigate [the agency's] attempts to apply the regulation on a case-by-case basis as warranted.").

EPIC's reliance on *National Mining Ass'n v. Jackson*, is misplaced. Although the court in *Jackson* considered documents that post-dated the issuance of the challenged agency regulation, the claims in that case charged that the regulation was being applied as a final rule and that it was being applied in an arbitrary and capricious manner. 856 F.Supp.2d at 158.

Because the complaint in this case does not challenge the way the Final Rule has been implemented or the way the Department has interpreted it in a particular case, the information contained in these documents is irrelevant to the inquiry before the Court.

Furthermore, EPIC has not demonstrated that the requested documents fall under any of the three recognized exceptions to the general rule that extra-record evidence should not be considered by the Court. *See Am. Wildlands*, 530 F.3d at 1002. First, EPIC has not alleged, and indeed could not allege, that the Department acted deliberately or negligently in excluding these requested documents because they did not exist at the time the Department issued its Final Rule. Second, EPIC has not asserted that the Department failed to explain its administrative action so as to frustrate judicial review. Finally, EPIC has not articulated any reasons why this case is so complex that the Court should permit the introduction of the documents as background information. *See* Pls.' Mot. at 10. Instead, EPIC merely argues that these documents provide "essential evidence" of just how broadly the complex Final Regulations can be interpreted. *Id*. The Court is confident that the record before it will provide sufficient background for determining the merits of this case, particularly in light of the strong presumption against supplementation.

## CONCLUSION

Because plaintiffs have not met their burden to show that supplementation of the Administrative Record is warranted, it is **ORDERED** that:

Consistent with this opinion, plaintiffs' Motion to Supplement the Administrative Record and Consider Extra-Record Evidence [Dkt. #11] is **GRANTED IN PART** and **DENIED IN PART**. The Clerk is directed to docket pages 6–37 of [Dkt. # 13-1] as a supplement to the administrative record.

**SO ORDERED.**

/s/ Amy B Jackson
_____
AMY BERMAN JACKSON
United States District Judge

DATE:  October 26, 2012