96TH CONGRESS }  HOUSE OF REPRESENTATIVES  {  REPORT
1st Session  }                                {  No. 96–338

# TECHNICAL AMENDMENTS RELATED TO THE EDUCATION AMENDMENTS OF 1978

JULY 13, 1979.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. PERKINS, from the Committee on Education and Labor, submitted the following

# REPORT

[To accompany H.R. 4591]

[Including cost estimate of the Congressional Budget Office]

The Committee on Education and Labor, to whom was referred the bill (H.R. 4591) to make technical corrections and miscellaneous amendments in certain education laws contained in the Education Amendments of 1978, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

The amendments are as follows:

1. Insert after paragraph (6) of the first section of the bill the following new paragraph and redesignate the succeeding paragraphs (and any references thereto) accordingly:

(7) by amending section 143(b) to read as follows:
"(b) AVAILABILITY OF FUNDS.—The Commissioner shall, from the funds appropriated for carrying out this subpart, reserve for purposes of this section for any fiscal year an amount which shall not be less than $6,000,000 nor more than 5 per centum of the amount so appropriated.";

2. In the first section of the bill, strike out "and" at the end of paragraph (16), strike out the period at the end of paragraph (17) and insert in lieu thereof "; and", and after that paragraph the following new paragraph:

(18) by adding at the end of section 1005(e) the following new paragraph:
"(3) From the funds appropriated pursuant to subsection (g)(1) of this section, the Commissioner is also authorized to make grants to and contracts with Indian tribes, Indian institutions, and Indian organizations, and public agencies and institutions for—
"(A) the national dissemination of information concerning education programs, services, and re

(1)

EXHIBIT
F

sources available to Indian children, including eval-
uations thereof; and

"(B) the evaluation of the effectiveness of fed-
erally assisted programs in which Indian children
may participate in achieving the purposes of such
programs with respect to such children.".

3. In section 2 of the bill, insert "(a)." after "SEC. 2." and insert at
the end of that section the following new subsection:

(b) Title XI of the Education Amendments of 1978 is
amended—

(1) by striking out "the Secretary of the Interior
shall" and everything that follows through the end of the
first sentence of section 1103(a)(1) and inserting in lieu
thereof the following: "the Secretary of the Interior shall
make payments of all funds appropriated under the au-
thority of the Act of November 2, 1921, for fiscal year
1978 (including any fiscal year 1978 funds subsequently
obligated in fiscal year 1979 from such appropriation)
for basic support contracts or grants to any school that
had a deficit in its operating budget for fiscal year 1978
as a consequence of the lack of complete payment from
the Department of the Interior for such contract or
grant.";

(2) by striking out "fifteen months" in the first sen-
tence of section 1121(b)(1) and inserting in lieu thereof
"eighteen months";

(3) by striking out "eighteen months" in the second
sentence of section 1121(b)(1) and inserting in lieu
thereof "twenty-one months";

(4) by striking out "Within one year of such date,"
in section 1121(f) and inserting in lieu thereof "No later
than January 1, 1981,";

(5) by striking out "Within one year of such date,"
in section 1122(c) and inserting in lieu thereof "No later
than January 1, 1981,";

(6) by inserting immediately before the period at the
end of the first sentence of section 1126(b) a comma and
the following: "including (but not limited to) school or
institution custodial or maintenance personnel";

(7) by striking out paragraph (4) of section 1128(a),
by redesignating paragraph (5) of such section as para-
graph (4), and by adding at the end of such section the
following new sentence:

"Upon the establishment of the standards required
by sections 1121 and 1122 of this Act, the Secretary
shall revise the formula established under this sub-
section to reflect the cost and funding standards so
established.";

(8) by redesignating subsection (c) of section 1128 as
subsection (d) and by inserting immediately after sub-
section (b) of such section the following new subsection:

"(c) The formula established under subsection (a) of this section shall be implemented for fiscal year 1980 and each succeeding fiscal year, except that—

"(1) for fiscal year 1980, no school shall as a consequence of such formula receive less than 90 per centum, nor more than 120 per centum, of the funds it received from Bureau education funds for fiscal year 1979;

"(2) for fiscal year 1981, no school shall as a consequence of such formula receive less than 70 per centum, nor more than 170 per centum, of the funds it received from Bureau education funds for fiscal year 1979; and

"(3) for fiscal year 1982 and any succeeding fiscal year the formula shall be fully implemented."; and

(9) by striking out "and" at the end of paragraph (5) of section 1132, by striking out the period at the end of paragraph (6) of such section and inserting in lieu thereof "; and", and by adding after such paragraph the following new paragraph:

"(7) information on the administrative and program costs attributable to each Bureau program, divided into discreet elements.".

4. In section 3 of the bill, insert "(a)" after "SEC. 3." and insert at the end of that section the following new subsection:

(b)(1) Section 5(b)(3)(C)(i) of such Act is amended by striking out "may file" and inserting in lieu thereof "may, in its discretion and without regard to the requirements of any other provision of law, file".

(2) Section 5(b)(3) of such Act is further amended by redesignating subparagraph (E) as subparagraph (F) and by inserting after subparagraph (D) the following new subparagraph:

"(E) If the local educational agency rejects the determination of the Commissioner and a tribe exercises the option under section 1101(d) of the Education Amendments of 1978, to have education services provided either directly by the Bureau of Indian Affairs or by contract with that Agency, any Indian students affiliated with that tribe who wish to remain in attendance at the local educational agency against whom the complaint which led to the tribal action (under such subsection (d)) was lodged may be counted with respect to that local educational agency for the purpose of receiving funds under section 3(d)(2)(D) of this Act. In such event, funds under such section shall not be withheld pursuant to subparagraph (D) and no further complaints with respect to such students may be filed under subparagraph (C)(i).".

5. Insert after section 6 of the bill the following new section and redesignate the succeeding section accordingly:

SEC. 7. Section 453(c) of the Indian Education Act is amended—

(1) by striking out "In establishing" and inserting in lieu thereof "On the form establishing"; and

(2) by adding at the end thereof the following new sentence:

"Nothing in the requirements of paragraphs (1) through (5) of this subsection shall be construed as changing or restricting the applicable eligibility definition set forth in subsection (a) of this section.".

The following are technical and conforming changes to the bill:

1. In the first section of the bill, strike out paragraph (2) and insert in lieu thereof the following and redesignate the succeeding paragraphs accordingly:

(2) by striking out "but did not meet" in section 123(b) and inserting in lieu thereof "but did meet";

(3) by striking out "section 183(g)" in section 124(g)(1) and inserting in lieu thereof "section 183(b)";

(4) by striking out subparagraphs (A), (B), and (C) of section 125(a)(1) and inserting in lieu thereof the following:

"(A) has a majority of members who are parents of children to be served by projects assisted under this title, who shall either be (i) elected by the project area or school advisory councils required to be established by paragraph (2)(A) of this subsection, or (ii) elected by the parents in such areas;

"(B) includes such additional members as may be (i) elected by the project area or school advisory councils required to be established by paragraph (2)(A) of this subsection, or (ii) elected by the parents in such areas;

"(C) includes representatives of children and schools eligible to be served by, but not currently participating in, programs assisted with funds provided under this title, who shall be elected by the parents in such areas; and

"(D) is established in accordance with regulations to be issued by the Commissioner which provide alternative models to carry out the subparagraphs (A) through (C) of this paragraph.

2. Paragraph 14 of the first section of the bill is amended to read as follows:

(14) by striking out "section 431(a)" in section 404(a)(8) and inserting in lieu thereof "section 521";

3. In paragraph (16)(C) of the first section of the bill (as so redesignated) strike out "under section 502(a)(1)" and "part A of".

4. In paragraph 18 of the first section of the bill (as so redesignated) insert "State or" immediately before "local educational agency" the first time it appears in the matter proposed to be added to the Elementary and Secondary Education Act of 1965 and strike out "local educational" the second time it appears.

5

5. In section 2(a) of the bill, insert after paragraph (4) the following new paragraph and redesignate the succeeding paragraphs accordingly:

(5) by striking out "1979" in section 1015(d) and inserting in lieu thereof "1980";

6. In section 2(a) of the bill, insert after paragraph (6) (as so redesignated) the following new paragraph and redesignate the succeeding paragraphs accordingly:

(7) by striking out "section 201(a)(3)" in section 1331(b) and inserting in lieu thereof "section 201(b)(3)".

7. In paragraph (8) of section 2(a) of the bill (as so redesignated), insert "year" immediately after "one" and insert "years" immediately after "two".

8. In section 3(b) of the bill (as amended), add at the end thereof the following new paragraph:

(3) Section 5(c)(2)(A)(v) of such Act is amended by striking out "clause (A)(ii) of this paragraph" and inserting in lieu thereof "clause (i)(II) of this subparagraph".

9. In section 4(c) of the bill, insert "or State" after "federally" in the matter proposed to be added to the General Education Provisions Act and insert before the period ", subject to the conditions specified in the proviso in paragraph (3)".

10. In section 5(b) of the bill, strike out "which are financially unable to raise sufficient funds to meet the matching requirements" in the matter proposed to be added to the Vocational Education Act of 1963 and insert in lieu thereof the following: "and other eligible recipients which are otherwise financially unable to provide such programs".

The title of the bill is amended to read as follows: "A bill to make technical corrections and miscellaneous amendments in certain education laws contained in the Education Amendments of 1978, and for other purposes."

### SUMMARY OF H.R. 4591

H.R. 4591 makes a number of technical and miscellaneous amendments to the Education Amendments of 1978 (Public Law 95-561) and other education statutes. Most of these amendments correct printing errors and clerical errors or change the dates for submission of reports to Congress. A few of these amendments attempt to rectify problems which have arisen due to oversights in the 1978 Amendments and which the Committee feels should be attended to before implementation of these amendments is too far along. All of these amendments are described in the section-by-section analysis contained in this report.

Among the minor substantive amendments included in the bill are two amendments clarifying the means for electing members of parental advisory councils under Title I of the Elementary and Secondary Education Act and reducing the volume of materials to be distributed to these councils and council members.

Other amendments revise the way in which States receive coordination money for the migrant program under Title I and guarantee

each State a certain minimum amount for the program for strengthening State departments of education in Title V of ESEA.

The bill also makes certain technical changes to the Title XI Indian Education programs of Public Law 95–561 and permits the use of carryover funds under Title IV–B for guidance and counseling for one year only.

The bill also contains minor amendments to the Family Educational Rights and Privacy Act, the Vocational Educational Act, and the Career Education Incentive Act, to take care of technical and minor problems not anticipated when these programs were last amended.

### EXPLANATION AND JUSTIFICATION OF H.R. 4591

Most of the technical and miscellaneous amendments contained in H.R. 4591 relate to Public Law 95–561, the Education Amendments of 1978. The bill also includes a few amendments to the Family Educational Rights and Privacy Act, the Vocational Education Act, and the Career Education Incentive Act.

Public Law 95–561, enacted on November 1, 1978, extends for five years and amends nearly all the major programs of Federal aid to elementary and secondary schools, including all the programs under the Elementary and Secondary Education Act. It is therefore a very lengthy and important piece of legislation.

The majority of the amendments contained in the bill correct printing, drafting, and clerical errors in Public Law 95–561. Several amendments extend the dates of submission for reports mandated in that law. Because Public Law 95–561 took effect immediately upon its enactment late in the 95th Congress, these extensions are necessary to give the Administration adequate time to do a thorough job on these reports.

The remainder of the amendments contained in H.R. 4591 address minor problems that have arisen or have threatened to arise since passage of Public Law 95–561 and the other laws mentioned above. The Committee feels that, given the scope of Public Law 95–561, these minor problems should be dealt with early on, so that implementation of the legislation over the next four years will proceed more smoothly. The need for these amendments, other than the printing and drafting errors and the extensions of reports, is discussed below.

*Title I parental advisory councils*

The bill contains two amendments which revise two provisions for parental participation added to Title I of the Elementary and Secondary Education Act by Public Law 95–561.

The first amendment clarifies the requirements for establishing district-wide level parental advisory councils. Current law states that these councils must have a majority of members who are parents of children to be served by Title I projects, must include representatives of children and schools which are eligible to be served but are not currently participating in Title I, and must be composed of members elected by the parents in each district.

However, it has come to the Committee's attention that many districts are confused about how to implement these provisions in a way that is not overly burdensome or disruptive to the existing councils.

7

In particular, many districts are concerned that a district-wide election would be required by the Office of Education.

Therefore, the amendment in H.R. 4591 seeks to clarify these provisions while retaining their intent. In particular, the new amendment explains in more depth the procedures for determining the make-up of the council.

Under the new amendment, the council will consist of three groups: (1) parents of children to be served by Title I, (2) representatives of children eligible to be served by Title I but not currently participating, and (3) other additional members. The new amendment retains the requirement that the Council have as a majority of its members parents of children to be served.

The Title I parent majority and the other additional members in the third group are to be elected either by the area or school level advisory councils or by parents of school-age children (and pre-school age-children if Title I is funding a pre-school program), including parents of children attending private schools, in the Title I project areas.

The remaining seats on the council must be reserved for representatives of children and schools eligible to be served by, but not currently participating in, Title I projects. These representatives are to be elected by parents of school-age children in the areas eligible for but unserved by Title I. The seats reserved for the representatives of of eligible but unserved children and schools should come from the minority membership of the council that is not required to be composed of parents of children to be served by Title I, in order to assure in the end result a Title I parent majority on the council. However, this does not preclude parents of children who are eligible for Title I but unserved to elect Title I parents to represent them. The only members of the council not elected by the area or school level councils or parents in the Title I project areas will be these representatives of the children and schools eligible for Title I but unserved.

It is further the intention of this amendment to permit the use of the so called "pyramid" structure in setting up the district level Title I parent advisory councils. Under this amendment it is permissible, but not required, for the members of each school level parent advisory council to elect one of their members to represent them on the district level council. However, there still would have to be an election held in which parents from the areas that are eligible for but unserved by Title I would elect their representatives to the district council.

Nothing in this amendment precludes either the parents from Title I projects or from the eligible but unserved areas from electing representatives to the district council who are not parents or who do not live in Title I project or Title I eligible areas, as long as at the end of the election process, a majority of the members of the council are parents of children to be served by Title I. In order to implement this amendment, there can be no requirement for residency within a project area for an individual to be eligible to be elected to a school level council. Otherwise, when the pyramid structure is used, individuals from outside Title I project areas and Title I eligible areas would automatically be excluded from eligibility on the district level council.

The Committee has directed the Commissioner to issue regulations showing alternative models which local school districts can follow

in complying with these requirements for parental advisory councils because we recognize the enormous diversity which exists among local educational agencies throughout the country. Rural school districts could be given some options to follow in fulfilling these requirements, while large city school districts could be given other options, but all school districts must comply with these general provisions in order to assure that parents have a voice in the operation of local Title I programs.

The second amendment regarding Title I parental participation would limit the distribution of the Title I statute, regulations, and materials to advisory councils and only to individual council members upon request. Presently, a district must distribute these materials to all council members. This amendment would therefore reduce the paperwork and expense of the distribution process but still insure that all council members have access to these documents.

## Migrant coordination funds

The bill contains an amendment clarifying that at least $6 million but not more than 5 percent of the funds appropriated for the migrant program under Title I be set aside for coordination of State migrant education activities. Present law would authorize an amount not to exceed 5 percent of the total migrant program funds paid to States for the preceding fiscal year.

It is the intent of the Committee that the minimum of $6 million be divided in such a way that the Migrant Student Record Transfer System receive $3.4 million and that the activities carried out by the Office of Education in interstate coordination receive $2.6 million. As the setaside is increased above the $6 million, the Committee intends that these two activities receive comparable shares of the excess.

## Title IV maintenance of effort

When Title IV of the Elementary and Secondary Education Act was revised last year, there was an inadvertent omission of the requirement that States must maintain their current levels of financial support for State departments of education if those States are to receive Federal funds to strengthen the activities of these departments. H.R. 4591 corrects that omission and restores the requirement.

The requirement is included in the section of the revised law which mandates a maintenance of effort for States in order to receive Part B funds for library books and equipment and Part D funds for guidance and counseling. This amendment in no way modifies those two requirements for such maintenance of effort in current law; it simply restores the inadvertently deleted requirement for support of State departments of education.

## Title V hold harmless

The bill contains two amendments relating to the program for strengthening State educational management which was newly authorized in Title V of ESEA by Public Law 95–561. The new legislation permits these State activities to be funded either under Title V–B or under Title IV–C of ESEA. Title IV–C was the exclusive source of State strengthening monies prior to the 1978 Amendments and was designated as the source for these funds for fiscal year 1979. Some con-

cern has arisen on the part of State educational agencies that the Title
V legislation is unclear regarding how these funds are to be allocated
and what the minimum level of funding ought to be. For this reason, it
is feared that Title IV does not represent a viable option to Title IV–C.

The amendments contained in H.R. 4591 would make the new Title
V program comparable to the Title IV–C program's State strengthen-
ing component. First, Title V is amended to insure that the amount
appropriated is at least equal to the level of State strengthening money
made available for fiscal year 1973. Second, a provision is included in
Title V to guarantee each State the amount it received in fiscal year
1973 for these activities, and to allow the Commissioner of Education
to distribute the excess on a discretionary basis.

## Guidance and counseling

Public Law 95–561 separated funds for guidance, counseling, and
testing from Title IV–B of ESEA, where they were formerly housed,
and placed these activities in a new Title IV–D. Because this legisla-
tion was passed after the fiscal year 1979 appropriations bill had been
enacted, no appropriations were made for fiscal year 1979 for Part D.
(The Title IV programs are advance funded, so that funds appropri-
ated for fiscal year 1979 are for use in fiscal year 1980.)

Although the President had requested that $18 million of the Title
IV–B money already appropriated for fiscal year 1979 be transferred
to the new Title IV–D, this proposal was not adopted as part of the
fiscal year 1979 supplemental appropriations bill.

Therefore, in order to help districts more easily make the transition
of guidance and counseling from Title IV–B to Title IV–D, H.R. 4591
contains an amendment to permit local educational agencies to use IV–
B carryover funds for guidance, counseling, and testing only during
fiscal year 1980. The revised so-called "Tydings Amendment" in the
General Education Provisions Act now states that carryover funds
must be spent in accordance with the statutory and regulatory provi-
sions that are in effect for the year in which they are used. This amend-
ment in H.R. 4591 will permit an exception to be made to this
provision, for one year only, to take care of the unusual circumstances
affecting guidance and counseling funds.

## Experimental project waiver authority

The bill contains an amendment to permit the 13 local educational
agencies which received a waiver of the usual Title I requirements in
order to participate in the National Institute of Education study of
Title I to continue their current practices during school year 1978–79.
This one-year continuation will help these districts, whose demonstra-
tions were quite useful in determining amendments to Title I last year,
make a smooth transition to the new Title I legislation.

## Indian education amendments

The bill contains a number of technical amendments to Title XI of
Public Law 95–561, Indian Education.

Title XI made several important changes in Federal Indian educa-
tion programs. Oversight of Title XI in the 96th Congress revealed
the necessity of enacting these technical and minor amendments. The
amendments are explained in the section-by-section analysis contained
in this report.

The Committee would like to note that Section 2(b)(1) of H.R. 4591 directs the Secretary of the Interior to pay any unpaid portion of any Johnson-O'Malley basic support contract or grant to each school which received a partial contract or grant payment in fiscal year 1978, if that school had a deficit in its budget for the school's operational year 1978 due to the failure of the Bureau of Indian Affairs to release the remaining funds for the basic support contract or grant.

The Committee would also like to explain that the purpose of the amendment in Section 2(b)(8) of the bill is to set in authorizing language a pattern for full implementation. This amendment balances the need for transition with the need for stability and the wish to minimize the damage to ongoing programs. Also, its presence in the Act will give assurances to those in the field that the formula will be implemented. It will allow for planning based on anticipated revenues generated by the percentages set in the law.

In writing this language, the Committee was guided by the excellent work of the BIA task force on formula funding. This work, which laid the framework and guidelines for this section, has been of inestimable value.

The percentages referred to in this section refer to situations of stable student population. The Bureau of Indian Affairs shall, in implementing this section, take such fluctuations into consideration.

## Family Educational Rights and Privacy Act

H.R. 4591 includes an amendment which would correct an anomaly which presently exists in FERPA. The Department of HEW is now interpreting that legislation as precluding State auditors from requesting records on students in order to conduct State audits of local and State-supported programs. The Department has recognized that this situation hampers States in carrying out necessary audits and evaluations and has recommended that the Committee adopt this amendment.

## Vocational Education Act

It has come to the attention of the Committee that some States are experiencing difficulty in meeting the requirements of Section 110(a) and (b) of the Vocational Education Act, as amended by the Education Amendments of 1976, Public Law 94–482. Section 110 requires each State to spend and match specified minimum percentages of its allotment under Section 102(a) for national priority programs. States must spend 10 percent for programs for the handicapped and 20 percent for programs for the disadvantaged. In addition, these funds must be matched dollar-for-dollar by the States.

Whereas many States have been able to generate additional matching funds for these purposes, some States have resorted to imposing some matching requirements on local educational agencies and other eligible recipients. In light of wide-spread State and local tax-cutting initiatives, however, obtaining matching funds has proven difficult for some States. As a result, States may be forced to return unexpended national priority program funds to the Federal Treasury.

This proposed amendment to the Vocational Education Act would help remedy this financial hardship by allowing the States, pursuant to regulations issued by the Commissioner, to exceed the fifty percent State-wide Federal share for programs and services for the handi-

33

THE ACT OF SEPTEMBER 30, 1950

AN ACT

To provide financial assistance for local educational agencies in areas affected by
Federal activities, and for other purposes

## TITLE I—FINANCIAL ASSISTANCE FOR LOCAL EDUCATION AGENCIES IN AREAS AFFECTED BY FEDERAL ACTIVITY

\*     \*     \*     \*     \*     \*     \*

PAYMENTS

APPLICATIONS

SEC. 5. (a) \* \* \*

PAYMENTS BY THE COMMISSIONER

(b) (1) \* \* \*

\*     \*     \*     \*     \*     \*     \*

(3) (A) \* \* \*

\*     \*     \*     \*     \*     \*     \*

(C) (i) Any tribe, or its designee, which has students in attendance at a local educational agency may, *in its discretion and without regard to the requirements of any other provision of law*, file a written complaint with the Commissioner regarding any action of a local educational agency taken pursuant to, or relevant to, the requirements of subparagraph (B) of this paragraph.

\*     \*     \*     \*     \*     \*     \*

*(E) If the local educational agency rejects the determination of the Commissioner and a tribe exercises the option under section 1101(d) of the Education Amendments of 1978, to have education services provided either directly by the Bureau of Indian Affairs or by contract with that Agency, any Indian students affiliated with that tribe who wish to remain in attendance at the local educational agency against whom the complaint which led to the tribal action (under such subsection (d)) was lodged may be counted with respect to that local educational agency for the purpose of receiving funds under section 3(d)(2) (D) of this Act. In such event, funds under such section shall not be withheld pursuant to subparagraph (D) and no further complaints with respect to such students may be filed under subparagraph (C)(i).*

[E] *(F)* This paragraph is based upon the special relationship between the Indian nations and the United States and nothing in it shall be deemed to relieve any State of any duty with respect to any citizens of that State.

ADJUSTMENTS WHERE NECESSITATED BY APPROPRIATIONS

(c) If the sums appropriated for any fiscal year for making payments on the basis of entitlements established under sections 2, 3, and 4 for that year are not sufficient to pay in full the total amounts which the Commissioner estimates all local educational agencies are entitled to receive under such sections for such year, the Commissioner shall

34

allocate such sums among local educational agencies and make payments to such agencies as follows:

(1) * * *

(2) (A) From that part of such sums which remains after the allocation required by paragraph (1) for any fiscal year, he shall allocate an additional amount equal to 65 per centum of the amounts described in the following schedule:

(i) * * *

* * * * * * *

(v) to each local educational agency with respect to which a number of children is determined under clause (3) of section 3(b) (other than such children with respect to whom a payment is made under [clause (A)(ii) of this paragraph] *clause (i)(II) of this subparagraph*) which equals 35 per centum of the amount to which such agency is entitled on the basis of determining such children, as computed under section 3(d), for such fiscal year;

## ASSISTANCE FOR CURRENT SCHOOL EXPENDITURES IN CASES OF CERTAIN DISASTERS

SEC. 7. (a) In any case in which—

(1)(A) the Director of the Office of Emergency Planning determines with respect to any local educational agency (including for the purpose of this section any other public agency which operates schools providing technical, vocational, or other special education to children of elementary or secondary school age) that such agency is located in whole or in part within an area which after August 30, 1965, and prior to October 1, [1978] *1983*, has suffered a major disaster as the result of any flood, drought, fire, hurricane, earthquake, storm, or other catastrophe which, in the determination of the President pursuant to section 2(a) of the Act of September 30, 1950 (42 U.S.C. 1885a(a)), is or threatens to be of sufficient severity and magnitude to warrant disaster assistance by the Federal Government; or

(B) the Commissioner determines with respect to any such agency that public elementary or secondary school facilities of such agency have been destroyed or seriously damaged prior to October 1, [1978] *1983*, as a result of flood, hurricane, earthquake, storm, fire, or other catastrophe, except any such catastrophe caused by negligence or malicious action; and

* * * * * * *

---

## GENERAL EDUCATION PROVISIONS ACT

### CONTROL OF PAPERWORK

SEC. 400A. (a) * * *

* * * * * * *

(e)(1) Subject to the provisions of paragraph (2), the Secretary shall develop, in consultation with Federal and State agencies

35

and local educational agencies, procedures whereby educational agencies and institutions are permitted to submit information required under any Federal educational program to a single Federal or State educational agency.

(2) Any procedures developed under paragraph (1) shall be considered regulations for the purpose of section 431 and shall be submitted subject to disapproval in accordance with section 431(e) of this Act for a period of not to exceed 60 days computed in accordance with such section.

**[(f)]**(*3*) The Secretary shall submit a report to the Congress not less than once every three years, describing the implementation of this section. Such report shall contain recommendations for revisions to Federal laws which the Secretary finds are imposing undue burdens on educational agencies and institutions, and such recommendations shall not be subject to any review by any Federal agency outside the Department.

(f)(1) The Secretary is authorized to make grants from sums appropriated pursuant to this subsection to State educational agencies, including State agencies responsible for postsecondary education, for the development or improvement of education management information systems.

(2) Any State educational agency is eligible for a grant of funds under this subsection subject to the following conditions:

(A) The Agency agrees to use such funds for the development or improvement of its management information system and agrees to coordinate all data collection for Federal programs administered by the agency through such a system.

(B) The agency agrees to provide funds to local educational agencies and institutions of higher education for the development or improvement of management information systems when such grants are deemed necessary by the State educational agency.

(C) The State agency agrees to take specific steps, in cooperation with the Secretary and with local educational agencies or institutions of higher education in the State, as appropriate, to eliminate excessive detail and unnecessary and redundant information requests within the State and to achieve the collection of information in the most efficient and effective possible manner so as to avoid imposing undue burdens on local educational agencies or institutions of higher education.

(g) For the purpose of carrying out this subsection—

(1) there are authorized to be appropriated for salaries and expenses $600,000 for fiscal year 1979, $1,000,000 for fiscal year 1980, and $1,200,000 for each of the two succeeding fiscal years;

(2) there are authorized to be appropriated for grants under **[paragraph (6)]** *subsections (f) (1) and (2)* the sums of $5,000,-000 for fiscal year 1979, $25,000,000 for fiscal year 1980, and $50,-000,000 for each of the two succeeding fiscal years; and

(3) the sums appropriated according to paragraphs (1) and (2) shall be appropriated as separate line items.

\*      \*      \*      \*      \*      \*      \*

PART B—APPROPRIATIONS AND EVALUATIONS

\*          \*      ,      \*          \*          \*          \*          \*

Subpart 2—Planning and Evaluation of Federal Education Activities

\*          \*          \*          \*          \*          \*          \*

ANNUAL EVALUATION REPORTS

SEC. 417. (a)〖(1)〗 Not later than November 1 of each year, the Secretary shall transmit to the Committee on Education and Labor of the House of Representatives and the Committee on Human Resources of the Senate an annual evaluation report which evaluates the effectiveness of applicable programs (including compliance with provisions of law requiring the maintenance of non-Federal expenditures for the purposes of such applicable programs) in achieving their legislated purposes together with recommendations relating to such programs for the improvement of such programs which will result in greater effectiveness in achieving such purposes. In the case of any evaluation report evaluating specific programs and projects, such report shall—

(A) set forth goals and specific objectives in qualitative and quantitative terms for all programs and projects assisted under the applicable programs concerned and relate those goals and objectives to the purposes of such program;

(B) contain information on the progress being made during the previous fiscal year toward the achievement of such goals and objectives;

(C) describe the cost and benefits of the applicable program being evaluated during the previous fiscal year and identify which sectors of the public receive the benefits of such program and bear the costs of such program;

(D) contain plans for implementing corrective action and recommendations for new or amended legislation where warranted;

(E) contain a listing identifying the principal analyses and studies supporting the major conclusions and recommendations in the report; and

(F) be prepared in concise summary form with necessary detailed data and appendices.

〖(2) In the case of programs and projects assisted under title I of the Elementary and Secondary Education Act of 1965, the report under this subsection shall include a survey of how many of the children counted under section 103(c) of such Act participate in such programs and projects, and how many of such children do not, and a survey of how many educationally disadvantaged children participate in such programs and projects, and how many educationally disadvantaged children do not. For purposes of the preceding sentence, the term 'educationally disadvantaged children' refers to children who are achieving one or more years behind the achievement expected at the appropriate grade level for such children.〗

\*          \*          \*          \*          \*          \*          \*

SUBPART 2—ADMINISTRATION: REQUIREMENTS AND LIMITATIONS

\*          \*          \*          \*          \*          \*          \*

PROTECTION OF THE RIGHTS AND PRIVACY OF PARENTS AND STUDENTS

SEC. 438. (a) \* \* \*
(b) (1) \* \* \*

\*          \*          \*          \*          \*          \*          \*

(5) *Nothing in this section shall be construed to prohibit State and local educational officials from having access to student or other records which may be necessary in connection with the audit and evaluation of any federally or State supported education program or in connection with the enforcement of the Federal legal requirements which relate to any such program, subject to the conditions specified in the proviso in paragraph (3).*

\*          \*          \*          \*          \*          \*          \*

VOCATIONAL EDUCATION ACT OF 1963

\*          \*          \*          \*          \*          \*          \*

## TITLE I—VOCATIONAL EDUCATION

PART A—STATE VOCATIONAL EDUCATION PROGRAMS

\*          \*          \*          \*          \*          \*          \*

SUBPART 1—GENERAL PROVISIONS

\*          \*          \*          \*          \*          \*          \*

ANNUAL PROGRAM PLANS AND ACCOUNTABILITY REPORTS

SEC. 108. (a) (1) \* \* \*

\*          \*          \*          \*          \*          \*          \*

(b) The annual program plan and accountability report shall be submitted to the Commissioners by the July 1st preceding the beginning of the fiscal year for which the plan is to be effective. This plan and report shall contain:

(1) \* \* \*

\*          \*          \*          \*          \*          \*          \*

(2) reporting provisions which—

(A) show explicitly the extent to which the State during the fiscal year preceding the submission of the plan and report has achieved the goals of the five-year plan and the degree to which the uses of Federal, State, and local funds proposed for that fiscal year in the plan have been complied with, including a description of these goals and uses in terms of the elements listed in clauses (2) (A) (i) through (2) (A) (iv) of section 107(b);

(B) show explicitly how funds available under this Act have been used during that fiscal year, including a description of the uses of these funds for State administration and

38

among the authorized uses of funds set out in sections 120, 130, 140, and 150, and including a description of the distribution of these funds among local educational agencies and other eligible recipients in conforming with the requirements contained in section 106(a)(5), and give the results achieved with these funds, *except that the Commissioner may modify this requirement pursuant to regulations in order to avoid any duplication of data-collection occurring under section 161 or under section 437 of the General Education Provisions Act*; and

(C) contains a summary of the evaluations of programs required to be conducted by section 112 and a description of how the information from these evaluations has been, or is being, used by the State board to improve its programs.

\*        \*        \*        \*        \*        \*        \*

### NATIONAL PRIORITY PROGRAMS

Sec. 110. (a) \* \* \*

\*        \*        \*        \*        \*        \*        \*

(e) *Pursuant to regulations established by the Commissioner, a State may exceed the 50 per centum Federal share specified in subsections (a) and (b) of the percentages set aside in subsections (a) and (b) by making larger payments with such funds to local educational agencies and other eligible recipients which are otherwise financially unable to provide such programs.*

\*        \*        \*        \*        \*        \*        \*

### SECTION 4 OF THE CAREER EDUCATION INCENTIVE ACT

\*        \*        \*        \*        \*        \*        \*

#### AUTHORIZATION OF APPROPRIATIONS

Sec. 4. [(a) Subject to the provisions of subsections (b) and (c), there] *There* are authorized to be appropriated $50,000,000 for fiscal year 1979, $100,000,000 for fiscal year 1980, $100,000,000 for fiscal year 1981, $50,000,000 for fiscal year 1982, and $25,000,000 for fiscal year 1983 to carry out the provisions of this Act, other than section 11 of this Act.

[(b) No funds are authorized to be appropriated pursuant to subsection (a) for any fiscal year beginning after September 30, 1979, unless an appropriation was made for the immediately preceding fiscal year.

[(c) No funds are authorized to be appropriated pursuant to subsection (a) for any fiscal year beginning after September 30, 1979, unless such funds are appropriated in the fiscal year prior to the fiscal year in which such funds will be obligated, and unless such funds are made available for expenditure to the States prior to the beginning of such fiscal year.]

39

## Section 453 of the Indian Education Act

##### DEFINITION

Sec. 453. (a)  \* \* \*

    \*          \*          \*          \*          \*          \*          \*

(c) **[**In**]** *On the form* establishing a child's eligibility for entitlement under part A of this Act, the Commissioner shall request at least the following information on the student eligibility form:

(1) the name of the tribe, band, or other organized group of Indians with which the applicant claims membership, along with the enrollment number establishing membership (where applicable), and the name and address of the organization which has updated and accurate membership data for such tribe, band, or other organized group of Indians; or, if the child is not a member of a tribe, band, or other organized group of Indians, the student eligibility form shall bear the name, the enrollment number (where applicable) and the organization (and address thereof) responsible for maintaining updated and accurate membership roles of any of the applicant's parents or grandparents, from whom the applicant claims eligibility;

(2) whether the tribe, band, or other organized group of Indians with which the applicant, his parents, or grandparents claim membership are federally recognized;

(3) the name and address of the parent or legal guardian;

(4) the signature of the parent or legal guardian verifying the accuracy of the information supplied; and

(5) any other information which the Secretary deems necessary to provide an accurate program profile.

*Nothing in the requirements of paragraphs (1) through (5) of this subsection shall be construed as changing or restricting the applicable eligibility definition set forth in subsection (a) of this section.*

○